James HYLER and Bonnie
Hyler, Appellees,

v.

Ed GARNER and Ed Garner's Autorama
RV Center, Inc., Appellants.

No. 94–1508.

Supreme Court of Iowa.

May 22, 1996.

As Amended on Denial of Rehearings
June 14, 1996.

Kevin W. Techau of Grefe & Sidney, P.L.C., Des Moines, for appellant.

John R. Hearn, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and TERNUS, JJ.

TERNUS, Justice.

Appellees, James and Bonnie Hyler, purchased a motor home from appellant, Ed Garner's Autorama RV Center, Inc. (Autorama). The Hylers subsequently sued to rescind the purchase agreement based on misrepresentations made by Autorama to induce the Hylers to buy the motor home. They also sought consequential damages and attorney fees under the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act. *See* 15 U.S.C. §§ 2301–2312 (1982). The trial court granted the requested relief from Autorama and its president, appellant Ed Garner. Autorama and Garner appeal.[1] We affirm and remand for the determination of a reasonable attorney fee for the Hyler's defense of this appeal.

I. *Background Facts and Proceedings.*

At the time of trial, James (Jim) Hyler was a fifty-five-year-old man who had injured his back at work, resulting in right leg numbness. He received social security disability payments, workers' compensation benefits and pension benefits. For many years he and his wife had enjoyed traveling with a camping trailer they pulled behind their Sub-

---

1. In the remainder of our opinion, we refer to Garner and Autorama collectively as "Autorama" unless the context indicates otherwise.

urban. Due to his back injury, however, Jim could not hook up the trailer. So, the Hylers decided to purchase a recreational vehicle.

After seeing a television advertisement for Autorama, the Hylers visited with a salesman there and looked at several display models. The Hylers explained to the salesman they wanted a motor home that Jim could drive and maintain within the limitations imposed by his disability. They were particularly concerned about having an adequate warranty so Jim would not be burdened with maintenance. Following several conversations with the salesman, the Hylers decided in July 1992, to purchase a 1992 Lexington Mallard recreational vehicle. They paid $62,-115 for the motor home, less a trade-in allowance of $16,000 for their Suburban and trailer.

The motor home purchased by the Hylers came with three warranties. The chassis manufacturer warranted the chassis, the diesel engine was warranted by its manufacturer and the coach was warranted by the motor home manufacturer, Mallard.[2] Autorama made no written warranty and disclaimed all implied warranties.

Over the next year, the Hylers experienced numerous problems with the motor home. Autorama contested the severity of these problems at trial, but did not dispute their occurrence. The problems occurring between late July 1992, and early July 1993, included many loose components such as the shifting console, television stand, air conditioner, batten strips, defroster vent and dinette arm. Autorama fixed these problems by using new screws, longer screws or rivets instead of screws. Autorama also had to reweld the left front bumper bracket because the original weld broke. Screws were missing in a parking light, the shower door fell off, the windows would not shut tight, the generator door would not stay closed, the spring for the seat swivel fell off, the fuel tank leaked and the entry door stuck. Autorama repaired these items with the exception of the seat spring which Jim replaced, the windows which the Hylers' son repaired, and

the gas tank leak which was repaired by a representative of the chassis manufacturer. During the first year of use, the windshield wipers required a new motor and the battery had to be replaced. Autorama replaced the wiper motor, but Jim had to locate a new battery for which Autorama reimbursed him. In addition, the outside lights failed once, the temperature gauge did not work properly, and the charging system failed due to bad wire connections, problems corrected by Autorama.

Three problems recurred during the year: the side walls separated from the floor in several places, air leaked across the dash, and the windshield seal loosened to the point the windshield began to fall out. The dash separation was so severe that the road was visible and the Hylers could not drive the motor home at night because too many bugs came through the opening. Despite numerous attempts to repair these problems, they continued to exist.

Garner testified that the problems experienced by the Hylers "were nothing out of the ordinary and were quite usual things that you would run into with a motor home." He also said the number of problems with the Hylers' motor home was low compared to other motor homes Autorama sells.

The written warranty from the manufacturer stated that if the buyer did not receive satisfactory warranty service from the dealer, the buyer was invited to contact the manufacturer. After the Hylers noticed the side walls separating from the floor, they attempted to call Mallard. They discovered that the manufacturer had ceased operations and filed a petition for bankruptcy in May 1992, two months prior to the date the Hylers purchased their vehicle.

The Hylers' attorney wrote to Garner in June 1993, rescinding the purchase contract and tendering the motor home. A few days later, Autorama's attorney responded on behalf of Autorama, denying the request for rescission and refusing the tender of the motor home.

---

**2.** References in this opinion to the manufacturer's warranty refer to the Mallard warranty, unless specific reference is made to the chassis or engine warranties. Similarly, references to the manufacturer refer to the coach manufacturer, Mallard.

In early July 1993, on the third occasion of the windshield separating from its housing, Jim called Autorama and asked Autorama to pick up the motor home to repair the windshield. Autorama did so. When Jim went to Autorama to obtain the motor home, Autorama refused to release it unless the Hylers signed a form acknowledging that Autorama had complied with all warranties and releasing Autorama from any further warranty liability. (The one-year manufacturer's warranty had not yet expired.) Jim Hyler told Garner that Autorama could keep the motor home.

The Hylers then filed this lawsuit against Garner and Autorama. Prior to trial, the parties stipulated that except for their claim under the Magnuson–Moss Act, the case was one in equity for rescission. The Hylers' claim for rescission was based on alternative theories: (1) breach of express warranties; (2) breach of implied warranties; (3) misrepresentation; (4) mistake; and (5) mutual rescission. After a bench trial, the district court ruled in the Hylers' favor on all issues. The court ordered Autorama to return the consideration paid by the Hylers for the motor home and the Hylers to transfer the certificate of title to Autorama. In addition, the court awarded the Hylers attorney fees and consequential damages under the Magnuson–Moss Act. Garner and Autorama appealed the judgment.

## II. *Admission of Expert Testimony.*

The Hylers relied on the expert opinion testimony of Merle Hardy. The trial court permitted this testimony over Autorama's challenge that Hardy lacked the qualifications to testify as an expert witness in the field of motor home construction.

■ Iowa Rule of Evidence 702 provides the standard for admission of expert testimony:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness *qualified as an expert by knowledge, skill, experience, training, or education* may testify thereto in the form of an opinion or otherwise.

Iowa R.Evid. 702 (emphasis added). We are "committed to a liberal rule on admissibility of opinion testimony." *Wick v. Henderson,* 485 N.W.2d 645, 648 (Iowa 1992); *accord Hutchison v. American Family Mut. Ins. Co.,* 514 N.W.2d 882, 885 (Iowa 1994).

■ A witness' ability to testify as an expert is determined in reference to the topic under examination. *In re O'Neal,* 303 N.W.2d 414, 420 (Iowa 1981). The witness must be qualified to answer the particular question propounded. *Wick,* 485 N.W.2d at 648. Whether a witness is sufficiently qualified to testify as an expert is within the court's discretion. *Tappe v. Iowa Methodist Medical Ctr.,* 477 N.W.2d 396, 402 (Iowa 1991); *Ganrud v. Smith,* 206 N.W.2d 311, 314 (Iowa 1973). Thus, we reverse only for a manifest abuse of discretion to the prejudice of the complaining party. *Tappe,* 477 N.W.2d at 402; *Ganrud,* 206 N.W.2d at 314.

■ Autorama claims that Hardy was not qualified to offer testimony on the quality of the motor home's construction, whether the repairs had properly been made, or whether the number or quality of repairs made during the first year were out of the ordinary. Hardy testified that the motor home suffered from numerous defective welds and displayed a haphazard selection of construction materials. These problems, according to Hardy, resulted in undue structural movement, creating excessive stress on the coach and causing many of the problems encountered by the Hylers. Hardy also criticized the manufacturer's use of foam to seal cracks, stating that a more permanent method, such as mechanically binding the cracks, should have been employed. Hardy testified he did not know if the problems experienced by the Hylers were typical of a new Mallard recreational vehicle.

The record shows that since 1929, Hardy has been a journeyman mechanic, welder and machinist, and an experienced motor vehicle repairman. He has taught welding and mechanics for the federal government. Hardy also served as a quality control manager and supervisor during World War II in an industry that manufactured trucks, tanks, and other machinery. Hardy frequently serves as a consultant in cases involving vehicles and

other machines. Although he has not consulted on a case involving a motor home since 1980, Hardy has disassembled an entire Winnebago recreational vehicle. In addition, he spent thirty to thirty-five hours inspecting and examining the Hylers' motor home. Hardy testified that the principles he applied in evaluating the Mallard motor home were the same principles he applies in evaluating any motor vehicle.

We conclude the district court did not abuse its discretion in admitting the expert testimony of Hardy. He is sufficiently qualified in welding and mechanics to address the matters covered in his testimony. Any deficiencies in his background or preparation, such as his failure to conduct mechanical or engineering tests on the motor home or his lack of recent experience with recreational vehicles as compared to other motor vehicles, goes to the weight of his testimony, not its admissibility. *See Hutchison,* 514 N.W.2d at 885 (if witness has threshold qualifications to testify as an expert, any inquiry concerning the *extent* of his qualifications goes to the weight of his testimony).

### III. *Admission of Correspondence Written By Parties' Attorneys.*

The district court admitted into evidence twelve letters written by the parties' attorneys between June 8, 1993, and August 18, 1993. Autorama contends that the letters are inadmissible under Iowa Rule of Evidence 408.

Rule 408 requires the exclusion of evidence of settlement negotiations offered solely to prove or disprove liability or damages. Iowa R.Evid. 408. Evidence of offers to compromise is admissible, however, if "offered for another purpose." *Id.; accord Bremicker v. MCI Telecommunications Corp.,* 420 N.W.2d 427, 428 (Iowa 1988) (evidence admissible on issue of attorney fees); *Miller v. Component Homes, Inc.,* 356 N.W.2d 213, 215 (Iowa 1984) (evidence admissible to show employer's intentional rather than inadvertent failure to pay).

The Hylers argue the letters in question are not excluded by rule 408 because either they are not offers of compromise or they are admissible for some other appropriate purpose. We agree. Without unduly lengthening this opinion, we merely state that several of the letters contain no offers to compromise or any other discussion of settlement. The remaining letters were relevant to whether there was a mutual rescission of the purchase agreement, whether the Hylers tendered the motor home to Autorama, whether Autorama assumed the manufacturer's written and implied warranties and whether the Hylers should be awarded attorney fees under the Magnuson–Moss Act.

### IV. *Trial Court's Refusal to View the Motor Home.*

The trial court denied Autorama's request that the court view the Hylers' motor home. *See* Iowa R.Civ.P. 194. Rule 194 provides when a court deems it proper, the court may order a viewing of "any real or personal property, or any place where a material fact occurred." *Id.* The fact finder is permitted to view physical property to assist it in better applying the testimony and understanding the evidence. *See Goodell v. City of Clinton,* 193 N.W.2d 91, 96 (Iowa 1971); *Hampton v. Burrell,* 236 Iowa 79, 91, 17 N.W.2d 110, 117 (1945). The decision to view is within the trial court's discretion. *Humphrey v. Happy,* 169 N.W.2d 565, 569 (Iowa 1969).

Autorama asserts the only way the trial court could understand the issues was to view the motor home. We disagree. Thirty-nine photographs of the motor home were introduced into evidence. In addition, three expert witnesses testified with respect to the condition of the motor home. Many of the problems about which these witnesses and the Hylers testified had been repaired by the time of trial. Some of the defects allegedly remaining, such as defective welds and poor construction materials, would not have been easily observed by the judge simply looking at the vehicle. Thus, viewing the motor home would not necessarily have assisted the trial court in understanding the testimony; certainly, such a viewing was not essential. Therefore, the trial court did not abuse its discretion in refusing to personally view the motor home.

## V. Scope of Review of Rescission Claim.

■ The Hylers' rescission claim was tried in equity. Our review of equity cases is de novo. Iowa R.App.P. 4. We do, however, give weight to the findings of fact made by the trial judge. *In re Marriage of Full*, 255 N.W.2d 153, 156 (Iowa 1977).

■ We exercise our de novo review only with respect to issues raised and preserved at trial. *Id.* at 156. Similarly, our review is confined to those propositions relied upon by the appellant for reversal on appeal. *Richardson v. Neppl*, 182 N.W.2d 384, 390 (Iowa 1970).

■ Our scope of review is important in this case. Autorama states in its brief:

> Autorama disputes fully and completely the trial court's *Findings of Fact, Conclusions of Law, and Judgment Entry*. The trial court's findings are not supported by the evidence or the law, and do not reflect judicial balance.

This broad, all-encompassing argument is insufficient to identify error as required for our de novo review. The appeal of an equity case does not entitle an appellant to a *trial* de novo, only *review* of identified error de novo. Therefore, we do not review each finding of fact and conclusion of law made by the trial court. Rather, we consider only the errors specifically assigned by Autorama and adequately supported by analysis and authority.

## VI. Was Rescission Properly Ordered Based on Misrepresentation?

The parties agreed at trial the Hylers' claim was one in equity for rescission based upon misrepresentation.[3] The Hylers made no claim for *damages* based on the tort of misrepresentation. Thus, we focus our examination on the elements of an equitable rescission claim. As noted above, our review is limited to those aspects of the ruling specifically challenged by Autorama on appeal.

The trial court considered the Hylers' claim of misrepresentation to be based on Autorama's alleged failure to disclose (1) the manufacturer's troubled financial condition and its bankruptcy, (2) the negligible value of the manufacturer's warranty, and (3) the extent of repairs which the Hylers could anticipate during their first year of ownership. The trial court's findings of fact indicate that it found all three nondisclosures as a basis for rescission of the purchase agreement. Autorama argues the evidence does not support several of the court's findings: (1) the Hylers relied on a representation that the motor home was covered by a full, as opposed to a limited, manufacturer's warranty; (2) Autorama knew of the manufacturer's bankruptcy; and (3) the manufacturer's financial problems affected the quality of the motor home, the viability of the written warranty and the value of the motor home.[4]

■ A. *Background.* Before we discuss the contentions made by Autorama on appeal, it is helpful to review the legal framework within which we will analyze these issues. It is significant to our discussion that the Hylers' claim is one for rescission based on misrepresentation. When a party claims that he has been induced to enter into a contract based on the other contracting party's misrepresentation, he may seek to avoid the contract by suing for rescission using the misrepresentation as a basis for the requested relief. *Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 568 (Iowa 1987); 2 Dan B. Dobbs, *Dobbs Law of Remedies* § 9.1, at 547 (2d ed.1993) (hereinafter "Dobbs"); 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 4.10 (1990).

■ Fraudulent inducement also gives rise to a tort claim for damages. *See*

---

**3.** Rescission was also sought on the basis of breach of warranties, express and implied, and mistake. In addition, the Hylers claimed the parties had mutually rescinded the purchase contract. We do not address these alternate bases for a judgment of rescission, as we find no reversible error in the trial court's decision to grant rescission on the basis of misrepresentation.

**4.** Many other factual findings made by the district court are challenged on appeal. We do not discuss them, however, because they relate to theories and issues other than the misrepresentation claim. To the extent any challenged factual findings are relevant to the claim made under the Magnuson–Moss Act, we discuss such findings later in this opinion.

*McGough v. Gabus,* 526 N.W.2d 328, 331 (Iowa 1995); Dobbs § 9.1, at 546–47. The elements of a tort claim for misrepresentation are well established: (1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent; (6) justifiable reliance; and (7) resulting injury or damage. *McGough,* 526 N.W.2d at 331. Because the remedy of rescission is seen as less severe than an award of damages, rescission has traditionally been available upon a lesser showing. *See* Dobbs § 9.2(2), at 554–55; Farnsworth § 4.10, at 404; *accord First Nat'l Bank v. Brown,* 181 N.W.2d 178, 181 (Iowa 1970) (rules for recovery in equity based on fraud "less strict" than in law actions). Thus, the proof required for rescission based on misrepresentation under Iowa law is less demanding than the proof necessary for the tort of misrepresentation. *Wilden Clinic, Inc. v. City of Des Moines,* 229 N.W.2d 286, 292 (Iowa 1975). When rescission rather than damages is sought, relief may be obtained without proof of scienter or pecuniary damage. *Id.; First Nat'l Bank,* 181 N.W.2d at 181; Dobbs § 9.3(2), at 581 (pecuniary damages not a prerequisite to rescission).

Confusion arises, however, when one attempts to define the element of intent in the context of a rescission action. *See Utica Mut. Ins. Co. v. Stockdale Agency,* 892 F.Supp. 1179, 1195 (N.D.Iowa 1995). As the federal district court noted in the *Utica Mutual* case, we have defined "intent" in two ways. *Id.* In some cases, the intent element is "intent to deceive." *E.g., McGough,* 526 N.W.2d at 331 (tort action for damages); *Garren v. First Realty, Ltd.,* 481 N.W.2d 335, 338 (Iowa 1992) (claim for damages); *Wilden Clinic,* 229 N.W.2d at 292 (equity action). In other cases, we have defined it as an "intent to induce the plaintiff to act or refrain from acting." *E.g., Rosen v. Board of Medical Examiners,* 539 N.W.2d 345, 349 (Iowa 1995) (reciting elements of a common law action for fraud), *cert. denied,* — U.S. ——, 116 S.Ct. 1319, —— L.Ed.2d —— (1996); *Hoefer v. Wisconsin Educ. Ass'n Ins. Trust,* 470 N.W.2d 336, 337 (Iowa 1991) (tort action for damages); *Air Host Cedar Rapids, Inc. v. Cedar Rapids Airport Comm'n,* 464 N.W.2d 450, 453 (Iowa 1990) (action for damages).

We need not reconcile these conflicting cases with respect to the nature of the intent element in a tort claim for misrepresentation, as such a claim is not involved in this case. It is necessary, however, to identify the elements of a claim for rescission based on misrepresentation to have an accurate context within which to address the issues on this appeal. In considering whether an equity claim for rescission requires proof of "intent to deceive" or merely proof of "intent to induce the plaintiff to act or refrain from acting," we find an inconsistency between the elimination of the scienter element in such a case and a requirement that "intent to deceive" be proved.

■ Scienter is knowledge of the falsity of a material representation. *McGough,* 526 N.W.2d at 331; *Air Host,* 464 N.W.2d at 453. It can be proved

by showing that the defendant had actual knowledge of the falsity, possessed reckless disregard for the truth [or] falsely stated or implied that the representations were based on personal knowledge or investigation. . . .

*McGough,* 526 N.W.2d at 331. On occasion, we have equated proof of scienter with proof of intent to deceive:

Scienter and intent to deceive may be shown when the speaker has actual knowledge of the falsity of his representations or speaks in reckless disregard of whether those representations are true or false.

*Garren,* 481 N.W.2d at 338. Clearly, if the scienter element is to be truly eliminated in equity cases for rescission, we must define the intent element in such a way that scienter is not reincorporated through the definition of intent.

■ We conclude the intent necessary in an equity action is "intent to induce the plaintiff to act or refrain from acting."[5] As

---

5. Under the rule stated in the Restatement (Second) of Contracts, a misrepresentation makes a contract voidable where it was either fraudulent or material, it induced the recipient to enter into the contract, and the recipient was justified in relying on the misrepresentation. Restatement (Second) of Contracts § 164 (1981). No request is made by the parties here to follow the Restate-

the federal district court stated in *Utica Mutual,*

> such a formulation of the "intent" element is proper in an equity action, because knowledge of falsity is not at issue, but whether misrepresentations induced the complaining party to contract is at issue.

*Utica Mut. Ins. Co.,* 892 F.Supp. at 1195. To adopt "intent to deceive" as an element in a rescission case would essentially inject scienter into the case, making the elimination of this requirement in equity cases illusory. Moreover, the requirement of an intent to deceive would be contrary to our cases holding that even innocent misrepresentations may be sufficient to support an action for rescission. *See, e.g., Alpen v. Chapman,* 179 N.W.2d 585, 590 (Iowa 1970); *Swanson v. Baldwin,* 249 Iowa 19, 23, 85 N.W.2d 576, 578 (1957); *Griswold State Bank v. Milne,* 416 N.W.2d 109, 114 (Iowa App.1987). Thus, the elements of an equitable claim for rescission based on misrepresentation are (1) a representation, (2) falsity, (3) materiality, (4) an intent to induce the other to act or refrain from acting, and (5) justifiable reliance.[6] We now turn to the specific claims made by Autorama.

■ B. *Did the Hylers rely on a representation that the motor home was covered by a full, as opposed to a limited, warranty?* At trial the Hylers claimed and the trial court found Autorama failed to disclose the negligible value of the manufacturer's warranty. On appeal, Autorama argues the evidence cannot support a finding the Hylers relied on a representation that the motor home was covered by a *full* manufacturer's warranty; Autorama points out the manufacturer's warranty was plainly labeled a *limited* warranty. We find no basis for reversal in this contention.

The evidence shows Bonnie Hyler was concerned about the quality of the Mallard motor home. The Autorama salesperson assured her "there was nothing to worry about," the motor home "had a full one-year warranty—factory warranty." The Hylers later discovered the manufacturer was in bankruptcy at the time they purchased the motor home. Garner testified at trial he knew at the time of Hylers' purchase that the manufacturer would not be responsive to warranty claims. Garner admitted he did not advise the Hylers' of potential problems with the manufacturer's warranty before they purchased the motor home.

The trial court's finding of misrepresentation was based on what Autorama failed to say, not what it said. Consequently, whether the manufacturer's warranty was full or limited was not the issue; the value of the warranty given by the manufacturer *based on the manufacturer's financial condition* was the focus of the claim made by the Hylers at trial. Thus, the fact that the Hylers could not have relied on a *full* warranty, as argued by Autorama, is irrelevant.

C. *Did Autorama know of the manufacturer's bankruptcy?* One of the misrepresentations upon which the Hylers relied to support their claim for rescission was Autorama's failure to disclose to them the manufacturer's troubled financial condition and its bankruptcy. Autorama claims the trial court erred in finding that Garner knew of the manufacturer's bankruptcy. *See* Restatement (Second) of Contracts § 161 (1981) (a person's nondisclosure of a fact is a misrepresentation only if the nondisclosed fact is *known* to the person); *Barrer v. Women's Nat'l Bank,* 761 F.2d 752, 761 (D.C.Cir.1985) (same); *Bossuyt v. Osage Farmers Nat'l Bank,* 360 N.W.2d 769, 774 (Iowa 1985) (holding that nondisclosure of a "known" fact can

ment rule and eliminate the intent element altogether where rescission is sought based on a material misrepresentation.

6. By listing these five elements, we do not mean to imply that proof of these elements guarantee a decree of rescission. We have held that rescission may not be available where the contract has already been affirmed by conduct inconsistent with avoidance. *See Robinson,* 412 N.W.2d at 568. We have also held that tender is a precon-

dition of a suit for rescission at law. *See Kunkle Water & Elec. v. City of Prescott,* 347 N.W.2d 648, 650 (Iowa 1984). The parties do not challenge the application or existence of these traditional prerequisites to rescission and therefore, we express no opinion on their validity. *See* Dan B. Dobbs, *Pressing Problems for the Plaintiff's Lawyer in Rescission: Election of Remedies and Restoration of Consideration,* 26 Ark.L.Rev. 322 (1972).

be an assertion under certain circumstances) (citing Restatement (Second) of Contracts § 161(b) (1981)).[7]

A letter written by Autorama's attorney to the Hylers' attorney stated Garner knew when the Hylers bought their motor home that the manufacturer had filed for reorganization, but Garner was not then aware the company had gone out of business. Although he equivocated at trial as to when he learned of the manufacturer's bankruptcy filing, Garner testified he went over the contents of his attorney's letters before they were sent. Additionally, one of Autorama's experts, himself the owner of a local recreational vehicle dealership, testified Mallard's bankruptcy was reported in a trade publication and it was "pretty common knowledge" in the motor home industry that Mallard was in bankruptcy. On our de novo review, we conclude Autorama knew of the manufacturer's serious financial troubles prior to the sale of the motor home to the Hylers. Therefore, we find no basis for reversal in this assignment.

D. *Did the manufacturer's financial problems affect the quality of the motor home, the viability of the written warranty or the value of the motor home?* The trial court found that the manufacturer's financial troubles had three effects: (1) cost-saving measures resulted in poor quality and defects in the motor homes; (2) the manufacturer's warranty was worthless; and (3) the motor home was less valuable and less marketable. Autorama contends the trial court erred in these findings.

As discussed above, the Hylers made an equitable claim for rescission. Consequently, they were not required to prove damage resulting from Autorama's misrepresentations. Therefore, even if the manufacturer's financial condition did not damage the Hylers, they are still entitled to rescission upon proof of the elements discussed above. Autorama does not explain how any error with respect to the challenged findings undermines the court's decision to grant *rescission*. Therefore, we conclude there is no basis for reversal.

VII. *Calculation of Restitution.*

■ Having proved they were induced to purchase a motor home from Autorama based on Autorama's misrepresentations, the Hylers are entitled to rescission of their purchase contract with Autorama and restitution. *See Robinson*, 412 N.W.2d at 568. Restitution may be "in kind, if it is possible to return what the recipient has given to the other party, or in the form of a money judgment based on the benefit that the recipient has conferred." Farnsworth § 4.15, at 428; *accord* Dobbs § 9.3(1), at 579–80.

■ Here the trial court ordered that Autorama return the purchase price of the motor home plus the value of the vehicles the Hylers traded for the motor home. The court ordered the Hylers, upon payment of the judgment, to surrender the motor home's certificate of title to Autorama. (Autorama already had physical possession of the motor home at the time of trial.) Autorama contends the Hylers' recovery should be reduced by a sum attributable to their use of the vehicle.[8]

7. Other than this argument, Autorama does not challenge the court's conclusion that Autorama's failure to disclose constituted a misrepresentation sufficient to permit rescission. *See generally Clark v. McDaniel*, 546 N.W.2d 590, 592 (Iowa 1996) (discussing when concealment is actionable in tort); *First Nat'l Bank v. Brown*, 181 N.W.2d 178, 182 (Iowa 1970) (discussing when mere silence by one party creates actionable fraud); Farnsworth § 4.11, at 404–11 (discussing the effect of concealment and nondisclosure).

8. Autorama's specific claim is that its return of the purchase price should be reduced by "the depreciation of the vehicle caused by the 11,000 miles [the Hylers] drove it." Although Autorama refers to a deduction for "depreciation," it de-

scribes this depreciation as due to the Hylers' *use* of the motor home. Autorama makes no claim that there should be a deduction for depreciation caused by general market conditions or defects in the motor home. This distinction is important. Although a rescinding purchaser must clearly account for his use of the restored property, as we will discuss, the rules with respect to depreciation due to general market conditions vary depending upon the basis for rescission. *See Sjulin v. Clifton Furniture Co.*, 241 Iowa 761, 769, 41 N.W.2d 721, 727 (1950) (where minor permitted to rescind a contract to purchase furniture based on incapacity to contract, return of the furniture was sufficient even though its value had declined by 30% because it was now used, not new, furniture); *Dickerson v. Morse*, 203

When the court orders rescission of a contract, it attempts to restore the status quo. *Potter v. Oster*, 426 N.W.2d 148, 152 (Iowa 1988); *Kilpatrick v. Smith*, 236 Iowa 584, 596, 19 N.W.2d 699, 705 (1945); *Dickerson v. Morse*, 203 Iowa 480, 484, 212 N.W. 933, 935 (1927). "Parties are returned to the status quo when benefits received under the contract have been returned and liabilities incurred have been removed." *Binkholder v. Carpenter*, 260 Iowa 1297, 1306, 152 N.W.2d 593, 598 (1967). Thus, the plaintiff and defendant must return to the other what each party has received. *Kilpatrick*, 236 Iowa at 596, 19 N.W.2d at 705; *Dickerson*, 203 Iowa at 484, 212 N.W. at 935; *Folkers v. Southwest Leasing*, 431 N.W.2d 177, 183 (Iowa App.1988); Dobbs § 9.3(3), at 584. In accord with these rules, a rescinding buyer generally must account for the value of the buyer's use of the seller's property. *E.g., Potter*, 426 N.W.2d at 151 (requiring deduction for reasonable rental value of land for period of occupancy); *McLain v. Smith*, 201 Iowa 89, 97, 202 N.W. 239, 243 (1925) (same where mutual rescission); *Johannsen v. Minnesota Valley Ford Tractor Co.*, 304 N.W.2d 654, 655 (Minn.1981) (en banc) (requiring seller of tractor to return the purchase price less an offset for buyer's use); Dobbs § 9.3(3), at 585.

We agree that the proper restitution to be made by Autorama should include a deduction for the Hylers' use of the motor home. The problem here is Autorama identifies no evidence in the record which would permit the trial court to calculate such a deduction. Autorama, as the party who would suffer loss if the value of the Hylers' use of the motor home is not established,

bears the burden of proof. *See* Iowa R.App.P. 14(f)(5). Autorama failed to prove the amount of any offset to which it would be entitled on account of the Hylers' use of the motor home. Therefore, the district court did not err in failing to deduct this amount from the judgment entered against Autorama.[9]

### VIII. *Award of Consequential Damages and Attorney Fees Under the Magnuson–Moss Act.*

A. *Scope of Review.* Pursuant to the parties' pretrial stipulation, a claim for damages under the Magnuson–Moss Act was submitted to the court for determination. Unlike the Hylers' claim for rescission, the Magnuson–Moss claim was tried at law. Therefore, we review the trial court's award of consequential damages and attorney fees for errors of law. Iowa R.App.P. 4. The district court's findings of fact are binding on appeal if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

The Magnuson–Moss Act created a federal remedy for breach of written and implied warranties falling within the statute. *Alberti v. General Motors Corp.*, 600 F.Supp. 1026, 1027 (D.D.C.1985).

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation … under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal or equitable relief … in any court of competent jurisdiction in any State….

15 U.S.C. § 2310(d)(1)(A). If the consumer prevails, he may recover attorney fees and

---

Iowa 480, 484, 212 N.W. 933, 935 (1927) (where contract for the purchase of real estate rescinded because the seller did not have good title, purchaser required to account for depreciation of buildings during time of possession); 1 George E. Palmer, *The Law of Restitution* § 3.12, at 307–08 (1978) (victim of innocent misrepresentation bears risk of loss from damage to or destruction of property; in cases of fraudulent misrepresentation, person making the misrepresentation bears risk); Dobbs § 9.3(3), at 589 (purchaser misled by innocent or negligent misrepresentation must account for depreciation in value of property through neutral forces, but not in cases

of fraud). Because Autorama mentions only "depreciation" caused by *use*, we apply the rules relating to the rescinding parties' obligation to account for their use of the property, rather than the rules relating to depreciation caused by general market conditions or other forces.

9. Autorama also argues the Hylers are not entitled to recover for loss of use during the time the motor home was being repaired. Although the Hylers sought $9000 for loss of use of the motor home, the trial court did not award damages on this claim. Therefore, we need not address this issue.

the costs and expenses associated with the action. *Id.* § 2310(d)(2).

Autorama's primary dispute with respect to the applicability of the Act is whether Autorama qualifies as a "warrantor." The term "warrantor" is defined in the Act as "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." *Id.* § 2301(5). The trial court found that Autorama was a "warrantor" as that term is defined in the Act for two reasons. First, it found Autorama had assumed the manufacturer's written warranty, and thereby became a person "who gives . . . a written warranty." Second, the court concluded Autorama was liable for breach of implied warranties of merchantability and fitness for a particular use despite its disclaimer at the time of sale because (1) Autorama waived its disclaimer when it agreed to assume the manufacturer's warranty obligations, and (2) such liability was imposed by Iowa Code section 613.18 (1993) because the manufacturer was judicially declared insolvent. Autorama claims it gave no warranties.

We conclude Autorama has failed to demonstrate any reversible error with respect to its liability based on the implied warranty of fitness for a particular purpose. Because the breach of only one warranty is sufficient to sustain an award under the Magnuson–Moss Act, we do not discuss the Hylers' claims based on express written warranty and the implied warranty of merchantability.

■ B. *Was Autorama obligated under an implied warranty falling within the scope of the Magnuson–Moss Act?* As noted above, a "warrantor" includes any person "who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5). An "implied warranty" under the Act "means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." *Id.* § 2301(7).

In the purchase agreement between Autorama and the Hylers, Autorama disclaimed all implied warranties:

> You understand that the vehicle is sold "as is" with all faults and that we make no warranty of merchantability and no warranty that the vehicle is fit for any particular purpose.

Garner himself testified, however, Autorama subsequently agreed to assume the manufacturer's warranty obligations. The manufacturer did not disclaim any implied warranties. Thus, there is substantial evidence to support the trial court's findings (1) Autorama waived its disclaimer, and (2) the obligations assumed by Autorama included liability for breach of the implied warranty of fitness for a particular purpose.[10]

■ Autorama also argues it made no warranty enforceable under the Magnuson–Moss Act because the Act only applies to *written* implied warranties. The Act provides remedies for breach of an "implied warranty," *see* 15 U.S.C. § 2310(d)(1), and the term "implied warranty" includes any "implied warranty arising under State law," *see id.* § 2301(7). Autorama points to no specific language in the statute limiting its applicability to written implied warranties, nor have we found any.

■ Similarly, Autorama contends the Act limits the recovery of attorney fees, costs and expenses to situations where a full written warranty is offered. This statement is simply not true. As previously discussed, section 2310 of the Act allows a consumer who has prevailed in an action against a warrantor for breach of "a written warranty, *implied warranty,* or service contract" to recover such sums. *Freeman v. Hubco Leasing, Inc.,* 253 Ga. 698, 324 S.E.2d 462, 469 (1985) (permitting recovery of attorney fees under Act for breach of implied warranty); *Champion Ford Sales, Inc. v. Levine,* 49 Md.App. 547, 433 A.2d 1218, 1227 (1981) (same). This assignment of error is without merit.

**10.** Because we have concluded the district court did not err in finding Autorama had voluntarily assumed the manufacturer's obligations for implied warranties, we do not address the effect of Iowa Code § 613.18 (1993). We merely note the immunity granted to a seller under that section does not extend to suits based on breach of the implied warranty of fitness for a particular purpose. *See* Iowa Code § 613.18(1)(a) (1993).

■ C. *Did Autorama breach its implied warranty?* Damages may not be recovered under the Magnuson–Moss Act unless the consumer shows the warrantor has failed to comply with a written warranty, implied warranty or service contract. 15 U.S.C. § 2310(d)(1). In determining whether Autorama breached its implied warranty of fitness for a particular purpose, we apply Iowa law. *See Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1012 (D.C.Cir.1986) (state warranty law applies in the absence of an express provision in the Magnuson–Moss Act), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987).

■ We conclude this issue has not been properly presented for our review and consideration. Autorama discusses at length whether there was a defect in the motor home that "substantially impairs its value" to the Hylers. *See* Iowa Code § 554.2608 (1993) (allowing revocation of acceptance of product whose nonconformity substantially impairs its value to the buyer). The determining issue under the Hylers' Magnuson–Moss claim, however, was whether Autorama complied with the implied warranty of fitness for a particular purpose. *See id.* § 554.2714 (allowing recovery of damages for breach of warranty). There is no discussion of this issue in Autorama's briefs.

In a case of this complexity, we will not speculate on the arguments Autorama might have made and then search for legal authority and comb the record for facts to support such arguments. Consequently, any error by the trial court in finding that Autorama breached an implied warranty was not preserved for our review. *See* Iowa R.App.P. 14(a)(3) (failure to argue an issue or cite authority in support if it in the brief may be deemed a waiver of that issue).

## IX. *Appellate Attorney Fees.*

The Hylers also request an award of appellate attorney fees. The decision to award attorney fees under the Magnuson–Moss Act is discretionary. *Samuels v. American Motors Sales Corp.,* 969 F.2d 573, 579 (7th Cir. 1992); *Larche v. Car Wholesalers, Inc.,* 80 Md.App. 322, 562 A.2d 1305, 1308 (1989); *Carl v. Spickler Enter., Ltd.,* 165 Wis.2d 611,

478 N.W.2d 48, 54 (1991). In view of the Hylers' successful defense of this appeal, we hold they are entitled to recover their reasonable appellate attorney fees. *See Troutman v. Pierce, Inc.,* 402 N.W.2d 920, 924 (N.D.1987) (a successful plaintiff's recovery of trial attorney fees should not be dissipated by the uncompensated expense of successfully defending an appeal). We remand this case to the district court for a determination of the amount of a reasonable fee. *See id.* at 926 (remanding for determination of reasonable appellate attorney fee); *Bostic v. Mallard Coach Co.,* 185 W.Va. 294, 406 S.E.2d 725, 733 (1991) (same); *see generally Dutcher v. Randall Foods,* 546 N.W.2d 889, 896–97 (Iowa 1996) (reviewing process for determining reasonable attorney fee under federal fee-shifting statutes).

## X. *Other Alleged Error.*

Autorama makes other arguments that are either without merit or lack sufficient discussion and supporting authority to permit an intelligent review of the issue. We find no basis for reversal in any of these arguments and will not further lengthen this opinion by discussing each separately.

## XI. *Summary.*

We find no abuse of discretion in the trial court's admission of Merle Hardy's expert testimony and the twelve letters written by the parties' attorneys. Nor did the trial court abuse its discretion in refusing to view the Hylers' recreational vehicle.

Additionally, Autorama has demonstrated no reversible error in the district court's decision to grant rescission based on misrepresentation. Although the Hylers were obligated to account for the value of their use of the motor home, there was insufficient evidence in the record to calculate such an offset.

With respect to the award of consequential damages and attorney fees under the Magnuson–Moss Warranty Act, we conclude Autorama assumed the manufacturer's implied warranty obligations. Therefore, the district court did not err in awarding damages and attorney fees under the Act.

Finally, we hold the Hylers are entitled to a reasonable attorney fee for their defense of this appeal. Therefore, we remand this case to the district court for the determination of a reasonable fee. Costs are taxed to the defendants.

**AFFIRMED AND REMANDED.**