# IN THE COURT OF APPEALS OF IOWA

No. 21-0031
Filed February 16, 2022

**MATTHEW DUANE MCGUIRE,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Woodbury County, Roger L. Sailer, Judge.

    Matthew McGuire appeals following summary disposition of his application for postconviction relief. **AFFIRMED.**

    Michael J. Jacobsma of Jacobsma Law Firm, P.C., Orange City, for appellant.

    Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee State.

    Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Matthew McGuire appeals following the district court's grant of summary disposition on his fourth application for postconviction relief. Singing the same song but with a different tune, McGuire's latest attempt to overturn a life sentence for his second offense of second-degree sexual abuse is framed as a cruel and unusual punishment challenge to an illegal sentence. He claims for the first time on appeal that he "is entitled to a hearing to determine if the life without parole sentence imposed upon him is grossly disproportionate to the crime he committed and is, thus, cruel and unusual punishment under the Iowa Constitution, thereby making his sentence illegal." On our review, we find the record sufficient to conclude that McGuire's challenge to the legality of his sentence fails.

## I. Background Facts and Proceedings

In separate criminal cases, McGuire was convicted of second-degree sexual abuse of a child in 1991, and again in 2004. Following the second conviction, he was sentenced to life in prison without the possibility of parole.[1] *See* Iowa Code §§ 709.3(2), 901A.2(5) (2001). We affirmed his conviction but preserved his ineffective-assistance claim for postconviction relief. *State v. McGuire*, No. 4-844/04-0187, 2004 WL 2952377, at *1 (Iowa Ct. App. Dec. 22, 2004). Procedendo issued in January 2005. McGuire filed an application for postconviction relief in April 2005, which was summarily disposed of in part and dismissed in part by the district court and affirmed on appeal. *McGuire v. State*,

---

[1] In the second case, he was also convicted of two counts of indecent contact with a child. The sentences imposed on those convictions were ordered to run concurrently with each other and the sentence imposed for second-degree sexual abuse.

No. 09-1506, 2010 WL 3155233, at *1–3 (Iowa Ct. App. Aug. 11, 2010). We also affirmed the denial of his second application, filed in 2011, as untimely. *McGuire v. State*, No. 11-1722, 2013 WL 3457420, at *1 (Iowa Ct. App. July 10, 2013). McGuire filed a third application in September 2013 that was again dismissed by the district court. *See McGuire v. State*, No. 14-0867, 2015 WL 4158772, at *5 (Iowa Ct. App. July 9, 2015). In the appeal from that application, we rejected McGuire's challenge to the applicability of the section 901A.2(5) sentencing enhancement to his second conviction. *See id.*

McGuire filed the application precipitating this appeal, his fourth, in April 2020. In his supporting documentation, McGuire raised eight pro se claims, which repeated the refrain that his 1991 conviction should not have been used to enhance his 2004 conviction under section 901A.2(5). Based on these claims, he argued his life sentence was illegal and subject to correction at any time.

In its answer and motion for summary disposition, the State asserted the application was barred by the statute of limitations and claim preclusion. In resistance, McGuire argued the evidence in his second trial was insufficient to prove his conduct was sexual in nature, section 901A.2 violates equal protection, and his life sentence is therefore illegal. McGuire raised additional claims in a pro se filing,[2] one of which asserted that his 1991 conviction is illegal because he "was

---

[2] With exceptions not applicable here, Iowa Code section 822.3A (2020) prohibits the filing of any pro se document and forecloses judicial authority to consider such documents where, as here, the applicant is represented by counsel. The statute took effect on July 1, 2019, prior to the commencement of this proceeding. *See* 2019 Iowa Acts ch. 140, § 35. Nevertheless, the district court considered McGuire's pro se filings.

under the age of 18 during part of the time frame the State claims that this crime occurred."

Following the State's response to each of the issues and McGuire's pro se reply, the matter proceeded to hearing, after which the State's motion for summary disposition was granted. McGuire appeals.

## II.  Standard of Review

We review summary disposition rulings in postconviction proceedings for legal error, but our review of constitutional claims is de novo. *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019).

## III.  Analysis

Forgoing the issues he raised in district court,[3] McGuire's sole claim on appeal is that he "is entitled to a hearing to determine if the life without parole sentence imposed upon him is grossly disproportionate to the crime he committed and is, thus, cruel and unusual punishment under the Iowa Constitution thereby making his sentence illegal." As the State points out, no meaningful claim was made or ruled on in the district court proceedings concerning whether McGuire's sentence of life imprisonment without the possibility of parole was cruel and unusual punishment.[4]

---

[3] We deem any challenge to the entry of summary disposition on issues raised below but not disputed on appeal waived. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").

[4] The only reference to cruel and unusual punishment we can find in the written record was in postconviction counsel's supplemental resistance to summary disposition, which passively suggested McGuire might have been a juvenile when he committed the act underlying his first conviction, so "an argument for cruel and unusual punishments need[s] developed through discovery." The same argument was mentioned by McGuire at the hearing on the State's motion for summary

A sentence that is illegal by virtue of the prohibition against cruel and unusual punishment may be corrected at any time. *See Veal v. State*, 779 N.W.2d 63, 64–65 (Iowa 2010). That said, when a sentence is alleged to be constitutionally illegal for the first time on appeal, as it is here, the lack of development of the claim in district court might leave us with more questions than answers. *State v. Hoeck*, 843 N.W.2d 67, 71 (Iowa 2014). As a result, the supreme court has suggested that it may be a disservice for us to decide such "claims without a thorough vetting of the claims in the district court."[5] *Id.* But while McGuire's claims are composed with a melody of sentence illegality, he really only forwards substantive claims relating to the underlying proceedings, tacking on allegations that his sentence is illegal as cruel and unusual because his substantive claims are meritorious.

Before addressing these claims, we begin with a brush up on McGuire's initial reference to *Bruegger*, which states "an individualized assessment of punishment should be permitted" when "a case involves an unusual combination of features that converge to generate a high risk of potential gross disproportionality." 773 N.W.2d at 884. Those features are "a broadly framed crime, the permissible use of preteen juvenile adjudications as prior convictions to enhance the crime, and a dramatic sentence enhancement for repeat offenders." *Id.*

---

disposition, although it was not separately listed as an issue by the parties or ruled upon by the court.

[5] One option to alleviate this dilemma would be to remand the matter to the district court for hearing, as McGuire requests, which would be in line with the general rule that issues not raised in district court will not be considered on appeal. *See Hoeck*, 843 N.W.2d at 71. We find that avenue unnecessary with the record made here. *Cf. State v. Bruegger*, 773 N.W.2d 862, 884 (Iowa 2009) (remanding to give the defendant an opportunity to further develop the record).

As to the breadth of the crime, McGuire cobbles his analysis together with a hope that our supreme court will overrule its prior caselaw. That hope was pinned on a case that was pending before our supreme court when briefing was done in this case—*State v. Montgomery*, 966 N.W.2d 641 (Iowa 2021). Similar to the argument made in that case, McGuire asserts that the "'sexual in nature' standards" set forth in *State v. Pearson*, 514 N.W.2d 542 (Iowa 1994) should be re-examined to "interpret Iowa's sexual abuse statute to require that the defendant act with some sexual motive or intent to gratify either themselves or the victim sexually."[6] He posits that because "insufficient evidence was proved at his 1991 trial to show [he] acted with a sexual motive or intent to sexually gratify himself," the 1991 conviction used to enhance the 2004 conviction "would not stand" in the event *Pearson* is overruled. If that occurs, McGuire argues that "using a conviction that could not be proven under today's legal standard to impose the harshest punishment that exists in the state of Iowa . . . would offend all notions of fundamental fairness and would certainly weigh in favor of gross disproportionality."

McGuire's hope was not fulfilled by the supreme court in *Montgomery*, which declined to overrule *Pearson* and reaffirmed its holding, repeating: "The legislature codified a sexual gratification element for lascivious acts but not for sexual abuse, which can be proven by sexual contact without a motive of sexual gratification." *Montgomery*, 966 N.W.2d at 646. Because McGuire's claim of

---

[6] *Pearson* held "that a sex act for purposes of Iowa Code section 702.17 does not have to be made to arouse or satisfy the sexual desires of the perpetrator or the victim, so long as the act is 'sexual in nature.'" *Montgomery*, 966 N.W.2d at 650 (citing *Pearson*, 514 N.W.2d at 455).

disproportionality is based on a new standard that has been rejected by the supreme court, we do not consider his argument on this point any further. Though we do note that in relation to this feature of gross disproportionality, McGuire agrees that his crime did not involve "statutory rape in the so-called Romeo and Juliet type of relationships," but instead involved "second degree sexual abuse where sexual contact occurs with a child under th[e] age of 12." McGuire's conduct was much more objectionable and downplays any inference of gross disproportionality. *Cf. State v. Oliver*, 812 N.W.2d 636, 651 (Iowa 2012).

Assuming the continued viability of *Pearson*, McGuire alternatively contends that the trial court in his second criminal case expressed concern that the court in his first criminal case did not require the State to prove his conduct was sexual in nature under *Pearson*. Thus, according to McGuire, "the record reflects enough doubts to undermine confidence that the evidence" used to convict him "in 1991 conformed to the legal standard required to prove [him] guilty of the offense being used to enhance" his second sentence and "would weigh in favor of disproportionality." Same song, different tune. This is not a substantive challenge to the sentence as illegal, but is instead a repackaging of the claim raised in his third application for postconviction relief—that his first conviction is invalid "because the jury instruction did not require the court to find the contact was sexual in nature" and it therefore could not be used to enhance the sentence of his second conviction. *McGuire*, 2015 WL 4158772, at *2–5. The district court correctly concluded that ground was finally adjudicated and may not be the basis for a subsequent application for postconviction relief. *See* Iowa Code § 822.8.

Next, as to the use of preteen juvenile adjudications to enhance a subsequent crime, McGuire argues that he *might* have been a juvenile at the time of the offense resulting in his first conviction, given the span of time the trial information alleged his act to have occurred—between July 1986 and October 1989—and his birthdate in September 1968. According to McGuire, "[t]his means [he] could have been age 17 when the offense occurred," thus implicating recent supreme court cases "related to cruel and unusual punishment as it pertains to youths and juveniles." As the district court noted, the verdict following the bench trial in the first case specifically found McGuire committed a sex act on October 30, 1989, after he reached the age of majority. It's true "that a past act as a juvenile is not comparable to an adult act," *Bruegger*, 773 N.W.2d at 885, but here McGuire was an adult. To the extent McGuire claims his brain remained adolescently underdeveloped even if he was not a juvenile, a line has been drawn and youthful-offender considerations do not apply to adult offenders. *See State v. Lyle*, 854 N.W.2d 378, 403 (Iowa 2014). At the end of the day, McGuire's "age at the time of his first offense does not support an inference that this sentence is grossly disproportionate." *See Oliver*, 812 N.W.2d at 652.

Turning to the third factor, dramatic sentencing enhancement for repeat offenders, McGuire highlights the enhancement of his sentence as a repeat offender from a term of imprisonment not to exceed twenty-five years with a mandatory minimum of 70% to life without the possibility of parole. In considering this factor, we note our "substantial deference to the penalties the legislature has established," the rarity "that a sentence will be so grossly disproportionate to the crime to . . . warrant further review," and the fact "that a recidivist offender is more

culpable and thus more deserving of a longer sentence than a first-time offender." *Id.* at 650.

On our review, we find no inference of disproportionality, so McGuire's challenge to the legality of his sentence fails. *See id.* at 647 ("The first step in [the gross-disproportionality] analysis . . . requires a reviewing court to determine whether a defendant's sentence leads to an inference of gross disproportionality. . . . If, and only if, the threshold test is satisfied, a court then proceeds to steps two and three of the analysis.").

In his final coda on appeal, McGuire claims the district court in his second proceeding *might* not have conducted an adequate colloquy to ensure his stipulation to his prior conviction was knowing and intelligent, which would weigh in favor of gross disproportionality. This is a procedural claim that has nothing to do with the legality or gross disproportionality of McGuire's sentence. It was not raised below, is not preserved, and cannot be raised for the first time on appeal. *See Tindell v. State*, 629 N.W.2d 357, 359 (Iowa 2001) (noting rules and caselaw "allow challenges to *illegal* sentences at any time, but they do not allow challenges to sentences that, because of procedural errors, are illegally *imposed*"). In any event, we have already observed in one of McGuire's appeals that

> [b]efore sentencing, the court conducted a colloquy with McGuire, which included informing him of the impact of his prior conviction on the imposition of his current sentence. Moreover, the State made an offer of proof of the prior conviction during McGuire's bench trial, and McGuire admitted to having committed the prior offense during his trial.

*McGuire*, 2010 WL 3155233, at *3.

**IV.     Conclusion**

We affirm the entry of summary disposition on McGuire's application for postconviction relief, and we reject his challenge to his sentence as illegal.

**AFFIRMED.**