# IN THE COURT OF APPEALS OF IOWA

No. 23-1109
Filed September 27, 2023

**IN THE INTEREST OF O.L. and A.L.,**
**Minor Children,**

**A.A., Father,**
       Appellant,

**E.C., Mother,**
       Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

The mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Lori M. Holm, Ankeny, for appellant father.

Francis Hurley, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie L. Moran, Assistant Attorney General, for appellee State.

Brooke J. Thompson of Miller, Zimmerman, & Evans, PLC (until withdrawal) and Sonia M. Elossais of Carr Law Firm, P.L.C., Des Moines, attorney and guardian ad litem for minor children.

Considered by Ahlers, P.J., Chicchelly, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**POTTERFIELD, Senior Judge.**

The mother and father separately appeal the termination of their respective parental rights to O.L. (born in 2021) and A.L. (born in 2020). The juvenile court terminated each parent's rights to both children pursuant to Iowa Code section 232.116(1)(h) (2023). The mother argues the court should have given her an additional six months to work toward reunification and that termination of her rights is not in the children's best interests. The father challenges whether (1) the State proved the statutory ground for termination, (2) the loss of his rights is in the children's best interests, and (3) a permissive factor should have been applied to save the parent-child relationships.

Our review is de novo. *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). It is confined to those issues that—after being properly preserved—are actually raised and briefed on appeal by the parent challenging termination. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996). Because "each parent's parental rights are separate adjudications, both factually and legally," we consider each parent's appeal separately. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted). That said, these parents live together and remain in a romantic relationship, and we cannot ignore reality and the extent these parents' lives are intertwined when deciding their respective legal challenges. *See In re G.B.*, No. 22-0439, 2022 WL 1657190, at *4 (Iowa Ct. App. May 25, 2022).

**I. Mother's Appeal.**

**A. Additional Time.**

The mother asks for six more months to work toward reunification with O.L. and A.L.[1]  To give the mother the extension she requests, we must be able to conclude the need for removal will no longer exist at the end of the extension.  *See* Iowa Code § 232.104(2)(b).  And we cannot do that here.

The parents consented to the removal of A.L. from their custody in July 2021—when A.L. was less than one year old—and, soon thereafter, also consented to the adjudication of A.L. as a child in need of assistance (CINA).  The mother admitted she was using heroin daily; she was pregnant with O.L. at the time, and he was born just a few months later.  O.L. was quickly adjudicated a child in need of assistance (CINA) but was not initially removed from the parents' custody.  Then in January 2022, the mother engaged in a physical altercation with the maternal grandmother with O.L. present.  The same day, the mother went to the father's residence—then with the paternal grandmother—and the mother and father engaged in an argument that required the involvement of law enforcement.  O.L. was then removed from the parents' care, and both O.L. and A.L. were placed in the custody of the paternal great-grandmother.  The children remained in the great-grandmother's custody at the time of the termination trial, which took place on April 5 and 6, 2023.

---

[1] We assume without deciding the mother preserved her request for more time in her written closing argument, which she filed during the period the court left the record open after the conclusion of the termination trial.

At trial, there was evidence that the mother tested positive for fentanyl multiple times throughout the pendency of the CINA case, including as recently as February 2023. And after trial—while the record was still open—the results from the mother's April 3 drug test came in, with another positive result for fentanyl. After her positive February drug test, the mother revoked her release regarding her drug and mental-health treatment, so the Iowa Department of Health and Human Services was unable to verify whether the mother was engaged in treatment. The mother reported switching to a new service provider, but when the social worker reached out, that provider denied the mother was a patient. At the termination trial, the mother testified she became a patient at the new provider on March 18—a few days after the social worker reached out requesting information from the provider. The mother maintained she attended mental-health therapy two or three times and was engaged in medication-assisted treatment (MAT) program.

The mother continued to use fentanyl as of two days before the termination trial, and it is unclear how engaged she was in either mental-health or substance-abuse treatment. We cannot say the mother will be in a position to resume caring for the children in six months, so delaying permanency is not warranted.

**B. Best Interests.**

The mother argues the loss of her parental rights is not in the children's best interests. When making a best-interests determination, we focus on the children's safety and their need for a permanent home. *In re J.E.,* 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). And we consider the best placement for furthering their long-term nurturing and growth and their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2).

Here, A.L. had been removed from the mother's custody for more than twenty-one months while O.L. had been removed for about fourteen months at the time of the termination trial. The mother was not yet able to provide the children a safe home, free of illegal drug use. And it is possible the mother will never be able to do so. These children deserve permanency now, and termination of the mother's parental rights will enable them to achieve it.

We affirm the termination of the mother's parental rights as to O.L. and A.L.

## II. Father's Appeal.

### A. Statutory Ground.

The juvenile court terminated the father's parental rights to O.L and A.L. pursuant to Iowa Code section 232.116(1)(h), which allows for termination when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father challenges only the fourth element—whether the children could have been returned to his custody at the time of the termination trial. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" as the time of the termination trial).

The father notes he had both employment and stable housing—an apartment he leased, in which he lived with the mother. The father consistently attended visits and was engaged in both mental-health and substance-abuse

treatment. While the father was also actively using opiates early on in the case, his drug test results showed he had not used any since December 2022.[2] For all of these reasons, he argues the children could be returned to his custody at the time of the termination trial.

We recognize the father had made progress toward his own sobriety. But four months without using opiates is not enough time to convince us the father will maintain sobriety long-term. *See, e.g.*, *In re P.S.*, Nos. 21-0395, 21-0779, 2022 WL 120411, at *4 (Iowa Ct. App. Jan. 12, 2022) (concluding four months of sobriety was not enough to return child to parent's custody); *In re K.B.*, No. 01-0615, 2001 WL 1448564, at *4 (Iowa Ct. App. Nov. 16, 2001) (same). And, like the mother, we cannot say the father can provide the children with a safe, drug free home, as the father continues to reside with the mother even though she continues to use opiates.[3] We agree with the juvenile court that the children could not be returned to the father's custody at the time of the termination trial.

---

[2] The father has consistently maintained that he did not intentionally use fentanyl in December; he claimed he used someone else's vape pen—meaning to ingest illegal marijuana—and ultimately ingested some amount of fentanyl. According to the father, his last intentional use of opiates was in late September 2022—a period of more than six months at the time of the termination trial. The juvenile court did not credit the father's explanation for his positive result in December; the court "believe[d] the parents knowingly ingested fentanyl together."

[3] The father testified the mother was not on the apartment lease and, if the court would return the children to him alone, he would have the mother move out. But we base our decision on the facts as they were at the time of trial, not some hypothetical future. *See In re Z.P.*, 948 N.W.2d 518, 524 (Iowa 2020) (reiterating that the issue to be decided under section 232.116(1)(h)(4) is whether the parent is prepared to assume a parenting role at the time of trial).

**B. Best Interests and Permissive Factors.**

Next, the father challenges whether termination of his parental rights is in the children's best interests.  The father notes the children remain in the custody of the paternal great-grandmother and argues that "[w]hile it may very well have been in the best interests of the children to remain in the paternal grandmother's care, the termination of [his] parental rights" was not necessary.  In the same vein, the father argues his rights need not be terminated because of his close bond with the children, *see* Iowa Code § 232.116(3)(c), and because the great-grandmother had legal custody of the children, *see id.* § 232.116(3)(a).  We understand the father's argument to be that the court should have taken a less permanent action than terminating his parental rights and should have instead placed the children in a guardianship with the great-grandmother.  *See* Iowa Code § 232.117(5) (allowing the court to avoid termination and enter an order in accordance with section 232.104); *see also id.* § 232.104(2)(d)(2) (allowing the court, after a permanency hearing, to transfer guardianship and custody of the child to an adult relative).

To order a guardianship under section 232.104(2)(d)(2), the court must find all of the following by clear and convincing evidence:

> a. A termination of the parent-child relationship would not be in the best interest of the child.
> b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.
> c. The child cannot be returned to the child's home.

*Id.* § 232.104(4).  Services have been offered to both parents and, as we have already concluded, the children cannot be returned to father at this time.  The question is whether termination of the father's parental rights is in the children's best interests.  *See id.* § 232.104(4)(a).

Here, the social worker was asked whether the department would recommend a guardianship in lieu of termination in this case, and the worker testified it would not due to the children's young ages and because of questions about the great-grandmother's ability or willingness to set appropriate boundaries when it comes to the father and the children. *See In re A.S.*, 906 N.W.2d 467, 477–78 (Iowa 2018) (noting the child's age of two years when concluding termination was in child's best interests); *see id.* at 478 (noting "there was physical and verbal aggression" in the relationship between the parent and potential guardian when concluding termination was in the child's best interests). Moreover, the great-grandmother did not testify, and we do not know if she was open to entering a guardianship. While the great-grandmother expressed willingness to adopt the children, she may not want the juvenile court to remain in her life until O.L. reaches the age of majority in sixteen years. *See* Iowa Code §§ 232.117(7)–(8) (setting out requirements for the guardian to report to the court every six months), .118(3) (providing that "[t]he authority of a guardian appointed by the court terminates when the child reaches the age of majority or is adopted"). For all of these reasons, we conclude termination of the father's parental rights, which will allow the children to achieve permanency through adoption, is in the children's best interests. *See A.S.*, 906 N.W.2d at 478 (concluding termination was in the child's best interests because the young child "deserve[d] a normal life with an adoptive family").

We affirm the termination of the father's parental rights to O.L. and A.L.

**AFFIRMED ON BOTH APPEALS.**