VALLEY BROOK DEVELOPMENT, INC., an Iowa Corporation, and James W. Hall and Carolyn B. Hall, Appellants,

v.

The CITY OF BETTENDORF, Iowa, an Iowa Municipal Corporation, Appellee.

No. 97–861.

Supreme Court of Iowa.

July 1, 1998.

Charles W. Brooke of Brooke & O'Brien, P.L.C., Davenport, for appellants.

Gregory S. Jager, City Attorney, Bettendorf, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

Plaintiffs, real estate developers, appeal from the district court's refusal to order the defendant city to return monies prepaid for road development. We affirm.

In 1988, the defendant City of Bettendorf passed ordinance number 6–88. The ordinance empowered the city to assess real estate developers for the cost of paving public streets immediately adjacent to their subdivision. The city, at its option, can require developers to either pave half the width of the adjoining streets or pay into escrow the funds necessary for the city to do the paving.

That same year plaintiffs James W. Hall and Carolyn B. Hall, successors in interest to Shadowbrook Development Company, sought to develop a portion of the city adjoining Crow Creek Road. In 1989 plaintiff Valley Brook Development, Inc. also desired to develop a portion of real property adjacent to Crow Creek Road. The city refused to approve the proposed developments until the required funds for paving Crow Creek Road were paid. So Shadowbrook paid $15,000 into escrow and Valley Brook paid $30,900. The payments were accompanied by written escrow agreements which provided the money would "be held in a trust and agency escrow account for the purpose of providing the paving of Crow Creek Road at such time as Crow Creek Road is paved."

The city subsequently received extensive federal funding to help defray the cost of paving its streets. The federal funds

prompted the city council to approve resolution number 419–95 which made the city, not adjacent landowners, responsible for upgrades of existing public streets. Later the city undertook to pave Crow Creek Road for $3,400,000. It determined $2,500,000 would come from the federal funds, $845,000 from the city's general funds, and $65,000 from the amounts prepaid by the plaintiffs and one other developer. When the city proceeded with the paving accordingly, it did not assess any other adjacent landowner or developer.

The plaintiffs then brought this equity action seeking return of the escrowed funds. The district court entered judgment for the city and the matter is before us on plaintiffs' appeal.

 I. Plaintiffs' only theory in district court proceeded from their assertion that city council resolution number 419–95 abated the city's authority under the ordinance to exact paving contributions from developers. Because their assessments were being held in escrow and in trust, plaintiffs contended they were entitled to a return of their money. The trial court correctly rejected this contention on finding that both of its premises were faulty. In the first place a city council resolution cannot undermine a city ordinance. The validity of an ordinance is not affected by a resolution; it is amended, repealed, or suspended only by an ordinance. *Massey v. City of Des Moines*, 239 Iowa 527, 536, 31 N.W.2d 875, 881 (1948); *G.W. Mart & Son v. City of Grinnell*, 194 Iowa 499, 503, 187 N.W. 471, 473 (1922); *Vaughn v. City of Cedar Rapids*, 527 N.W.2d 411, 413 (Iowa App. 1994).

 Plaintiffs' other premise was also infirm because under the arrangement there was nothing, either in the ordinance or the escrow agreements, to contemplate a return of funds to developers in the event other funds were acquired. The stated purpose for the assessments was to help defray the cost of paving the adjacent road. As the trial court pointed out, and is obvious, this is the precise purpose for which the funds were expended.

 II. On appeal plaintiffs assert a variety of other theories for recovery. None were argued at trial or considered by the district court. Plaintiffs now maintain the city's decision to keep the funds without assessing other property owners for the road improvements deprived them of consideration for their contract, frustrated the purpose of the agreement, or constituted an abandonment of the contract. They also now claim retention of the assessments violated Iowa Code chapter 384 because the assessments were not levied against all lots benefitted, constituted an illegal special assessment, and violated general equitable principles. And plaintiffs now contend they entered into the agreement under coercion so the preassessments were illegal or ultra vires.

Although the case was tried in equity, an appellant cannot urge a theory to us not advanced in district court. *Mensch v. Netty*, 408 N.W.2d 383, 386 (Iowa 1987); *Stolar v. Turner*, 237 Iowa 593, 606, 21 N.W.2d 544, 550 (1946); *see also Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) (we exercise our de novo review in equity cases only with respect to issues raised and preserved at trial). We therefore may not consider plaintiffs' alternative theories for relief.

**AFFIRMED.**