**IN THE COURT OF APPEALS OF IOWA**

No. 14-2174
Filed March 25, 2015

**IN THE INTEREST OF C.M.,**
**Minor Child,**

**J.H., Father,**
　　Appellee,

**K.R., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Woodbury County, Julie Schumacher, District Associate Judge.

　　A father and mother separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

　　Matthew Metzgar of Rhinehart Law, P.C., Sioux City, for appellant father.

　　Jessica Noll of Deck Law, L.L.P., Sioux City, for appellant mother.

　　Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant Attorney General, Patrick Jennings, County Attorney, and Loan Hensley, Assistant County Attorney, for appellee-State.

　　Molly Joly of Vakulskas Law Firm, P.C., Sioux City, for minor child.

　　Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, C.J.**

The mother and father of C.M. separately appeal the termination of their parental rights. Because the mother does not dispute the statutory grounds for termination have been met and we find termination is in C.M.'s best interests, we affirm the juvenile court's termination of the mother's parental rights. Because the father does not dispute the statutory grounds for termination have been met, we find termination is in C.M.'s best interests, and there is no permissive factor weighing against termination, we affirm the juvenile court's termination of the father's parental rights.

**I. Background Facts and Proceedings.**

C.M. was born in March 2006. He was residing with the mother, his step-father (R.R.), and his half-brother (T.M.), when the family came to the attention of the Iowa Department of Human Services (DHS) in October 2013. R.R. had contacted DHS and reported the mother was using methamphetamine. C.M.'s biological father, J.H., was incarcerated in federal prison in Virginia at the time and remained so throughout the pendency of the case.[1]

On November 5, 2013, the mother underwent a substance abuse assessment and drug testing. She tested positive for amphetamine/ methamphetamine. Additionally, she disclosed she used methamphetamine daily and smoked marijuana three or four times per week. The mother initially agreed to outpatient drug rehabilitation treatment until she could be placed in an inpatient program. She failed to comply. As a result, C.M. was removed from the mother's custody on November 25, 2013.

---

[1] J.H. does not anticipate being released from prison until June 2019.

The State filed a petition alleging C.M. and T.M. were both children in need of assistance (CINA), pursuant to Iowa Code sections 232.2(6)(b), (c)(2), (n) (2013).

On January 9, 2014, the juvenile court adjudicated both children as CINA pursuant to each of the alleged sections. T.M. was allowed to remain in the custody of R.R. pending disposition. C.M. was placed in the custody of DHS but allowed to remain in the family home with R.R.

For the next several months, the mother continued to use methamphetamine. She was repeatedly advised to participate in drug rehabilitation treatment and entered several programs, but she never successfully completed any of them. Although the court recognized R.R. was providing safe housing for the children and they "appear[ed] to be doing well," the juvenile court expressed concerns that the mother stayed in the family home some days and nights even though she was ordered not to do so.

On April 25, 2014, the State filed a motion to modify placement of C.M. On May 8, 2014, the juvenile court held a hearing on the matter. The mother and R.R. had moved to North Dakota with the children—with the permission of DHS—for a short time in April 2014. During that time period, C.M. was not enrolled in any school, and he missed several days of class. R.R. believed the mother was using methamphetamine while the family was in North Dakota, and he moved back to Iowa with both children. The court denied the State's motion to modify placement.

The State filed a petition to terminate both the mother's and the father's parental rights to C.M. on August 5, 2014.[2] The petition alleged there was clear and convincing evidence to terminate the mother's parental rights to C.M. pursuant to Iowa Code section 232.116(1)(d) and (i). The petition alleged there was clear and convincing evidence to terminate the father's parental rights to C.M. pursuant to Iowa Code section 232.116(1)(b) and (e). The same day, C.M. was removed from placement with the step-father and placed with the paternal grandmother.

The juvenile court held a termination hearing on September 22, 2014. At the hearing, the mother acknowledged her continuing struggle with drug addiction and did not resist termination of her parental rights. The father was not present and did not testify, and no evidence was offered on his behalf.

On December 19, 2014,[3] the court filed an order terminating the mother's parental rights to C.M. pursuant to sections 232.116(1)(d) and (i). The father's parental rights to C.M. were terminated pursuant to sections 232.116(b) and (e). The mother and father separately appeal.

---

[2] The petition also alleged there was clear and convincing evidence to terminate R.R.'s parental rights to T.M. pursuant to Iowa Code sections 232.116(1)(d) and (i). At the termination hearing, the State announced it intended to give both R.R. and the mother an additional six months to work towards reunification with T.M. "in light of the progress that we believe that [R.R.] has made over the last month, month and a half."

[3] R.R. filed a motion to intervene on August 1, 2014. The court ruled the termination hearing could continue as scheduled but agreed a ruling on the termination petition would not be filed until the court could hold a hearing and rule on the motion to intervene. On December 19, 2014, the court granted R.R.'s motion to intervene. R.R. has not appealed from the termination order denying his request for guardianship of C.M.

**II. Standard of Review.**

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

**III. Discussion.**

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *P.L.*, 778 N.W.2d at 39. The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the statutory best-interest framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

**A. Mother's Appeal.**

At the termination hearing, the mother did not resist the termination of her parental rights. Rather, the mother expressed that she recognized C.M.'s need for permanency and stated her wish that C.M.'s step-father be named his legal

guardian.[4]   Similarly, the mother does not dispute the statutory grounds for termination have been met.[5]   Thus any claim of error related to the statutory grounds has been waived.  *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").

The mother maintains it was in the best interests of the child for the juvenile court to name C.M.'s step-father, R.R., as his guardian so C.M. could remain with his half-brother.  Although C.M.'s half-brother was residing with the step-father at the time of the termination hearing, the half-brother was also under the jurisdiction of the juvenile court and the protective supervision of DHS.  The district noted, "For a majority of [C.M.'s] life, he was of the belief that [R.R.] was his father."  We perceive no benefit by a guardianship under these circumstances because the child would remain in limbo.  By termination, R.R. or C.M.'s paternal or maternal grandparents can seek to adopt C.M. where permanency is most readily achieved.  *See In re A.C.*, 415 N.W.2d 609, 613–14 (Iowa 1987).  We believe termination achieves permanency in this case and is in C.M.'s best interests.

The mother did not argue any of the exceptions or factors against termination apply in this case.  Upon our de novo review, we conclude no

---

[4] The juvenile court did not terminate the mother's parental rights under Iowa Code section 232.116(1)(a), which allows the court to terminate a parent's parental rights when "the parents voluntarily and intelligently consent to the termination of parental rights and the parent-child relationship and for good cause desire the termination."
[5] When the juvenile court terminates a parent's parental rights on multiple grounds, we may affirm the termination on any ground we find supported by the record.  *D.W.*, 791 N.W.2d at 707.  Although the mother makes a general claim that clear and convincing evidence does not support termination of her parental rights, she fails to challenge specifically either of the statutory grounds relied on by the juvenile court.

exception or factor in section 232.116(3) applies to make termination unnecessary.

We affirm the termination of the mother's parental rights to C.M.

**B. Father's Appeal.**

The father does not dispute that statutory grounds for termination have been met, so any claim of error related to the statutory grounds has been waived. *See Hyler*, 548 N.W.2d at 870. Rather, he maintains it was not in the best interests of C.M. to terminate the father's parental rights and that termination was not necessary because C.M. was placed with his paternal grandmother at the time of termination.

At the time of the termination hearing, the father was incarcerated in federal prison in Virginia. He did not anticipate being released until June 2019. The father had not maintained a relationship with C.M. while being incarcerated. In fact, C.M. believed his step-father, R.R., was his biological father until sometime after DHS became involved with the family on November 25, 2013. C.M. was attending therapy to address his "family-of-origin-issues." Additionally, termination of the father's parental rights will allow C.M. to achieve permanency. *See In re A.M.*, 843 N.W.2d 100,113 (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and her "need for a permanent home")). Termination of the father's parental rights is in C.M. best interests.

The father also contends termination was not necessary because C.M. was placed with the paternal grandmother. However, "[t]he factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the

court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *A.M.*, 873 N.W.2d at 113. Additionally, section 232.116(3)(a) applies only when a relative has *legal* custody of the child in question. Here, while C.M. was placed with his paternal grandmother, DHS still maintained legal custody of the child. We also note both the paternal grandmother and maternal grandmother have expressed an interest in adopting C.M. We find none of the permissive factors weigh against termination.

We affirm the termination of the father's parental rights to C.M.

**IV. Conclusion.**

Because the mother does not dispute the statutory grounds for termination have been met and we find termination is in C.M.'s best interests, we affirm the juvenile court's termination of the mother's parental rights. Because the father does not dispute the statutory grounds for termination have been met, we find termination is in C.M.'s best interests, and there is no permissive factor weighing against termination, we affirm the juvenile court's termination of the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**