**IN THE COURT OF APPEALS OF IOWA**

No. 20-0295
Filed May 13, 2020

**IN THE INTEREST OF A.D.,**
**Minor Child,**

**D.G., Mother,**
         Appellant.
_____

         Appeal from the Iowa District Court for Scott County, Christine Dalton , District Associate Judge.

         A mother appeals a permanency review order transferring guardianship and custody of her child and finding that the State made reasonable efforts in her child-in-need-of-assistance case.  **AFFIRMED.**

         Grishma Arumugam, Bettendorf, for appellant mother.

         Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

         Rebecca G. Ruggero, Davenport, attorney and guardian ad litem for minor child.

         Considered by Bower, C.J., May, J., and Blane, S.J.*

         *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**BLANE, Senior Judge.**

The mother, Danielle, appeals a permanency order transferring custody and guardianship of one child, A.D., to his stepfather, Joseph, and finding the State made reasonable efforts at reunification. Because there is clear and convincing evidence to support the court's conclusions, we affirm.

The three children in this family—thirteen-year-old A.D., seven-year-old G.G., and four-year-old L.H.—have been the subject of child-welfare proceedings for several years now. Most of the issues revolve around the domestic abuse the mother and children have suffered at the hands of the L.H.'s father, Ryan. The physical abuse, particularly that against A.D., is recounted in some detail in the supreme court case, *In re L.H.*, 904 N.W.2d 145, 146–47 (Iowa 2017).

Before Danielle began dating Ryan, she was married to Joseph, and they had G.G. together. A.D.'s father has been largely absent from the proceedings. In fall 2018, law enforcement executed a search warrant of Danielle and Ryan's home and discovered evidence they were using and selling marijuana. The children were removed. A.D. and G.G. were placed with Joseph, where they have stayed throughout the remainder of the case.[1]

The family case plan required Danielle and Ryan to participate in substance-abuse testing and treatment and resolve their domestic-violence issues as directed by the Iowa Department of Human Services (DHS) and through offered services. For most of this case, Danielle and Ryan did not participate in services. They generally denied substance-abuse issues and Danielle denied and

---

[1] *See In re L.H.*, No. 19-0931, 2019 WL 5063336, at *1 n.1 (Iowa Ct. App. Oct. 9, 2019).

minimized physical abuse Ryan perpetrated against her and the children. DHS workers observed Danielle was unable to protect A.D. from Ryan's abuse because she did not acknowledge it. Danielle and Ryan seemingly remained in a relationship until around mid-2019, when Danielle moved out of their home.

In January 2020, the case came on for a permanency review hearing. By then, A.D. had been out of Danielle's care for eighteen months. She had recently begun making some progress in the case safety goals. But the court determined it was in A.D.'s best interests to change the case permanency plan from reunification to a guardianship with Joseph. Danielle appeals.

Our review of child-welfare proceedings is de novo. *In re A.T.*, 799 N.W.2d 148, 150–51 (Iowa Ct. App. 2011). We give weight to the factual findings of the juvenile court but are not bound by them. *Id.*

Danielle raises two contentions. First, she contends the court erred in finding the State made reasonable efforts to reunify her with A.D. The State believes Danielle failed to preserve error by not raising any objections to the efforts DHS made at the permanency hearing. Before entering a permanency order transferring custody and guardianship of a child to a suitable person, the court must find "[s]ervices were offered to the child's family to correct the situation which led to the child's removal from the home." Iowa Code § 232.104(4)(b) (2018).

We have reviewed the transcript and filed exhibits and agree with the State. In her petition on appeal, Danielle asserts she preserved error through a "contested hearing, objections to evidence, and Notice of Appeal."[2] But the only

---

[2] "[F]iling a notice of appeal is insufficient to preserve error for our review." *In re J.K.*, No. 18-2111, 2019 WL 1058098, at *3 (Iowa Ct. App. Mar. 6, 2019) (citing

objections she raised were to the admission of several exhibits and to the court taking judicial notice of the published supreme court case addressing this family. The mother did not raise a complaint about DHS's services until her petition on appeal. Therefore, the issue is waived. *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) ("[P]arents have a responsibility to object when they claim the nature or extent of services is inadequate. . . . 'In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it . . . .'" (citations omitted)).

Next, Danielle contends the court applied the wrong standard to determine whether DHS had provided reasonable efforts. Rather than imposing the wrong standard, we interpret this argument as a challenge to the court's ultimate conclusion the permanency goal should be changed to guardianship.[3] To the extent the argument revolves around the reasonableness of DHS's efforts, that challenge is not preserved. But there was a contested hearing where the mother challenged some of the testimony and evidence offered. Therefore, we consider this issue preserved for our review.

The mother contends, although she was making good progress with the case plan, the court improperly relied on the evidence of her ongoing relationship

---

Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006)).

[3] This is the only recognizable argument in part II of the mother's petition on appeal. To the extent the petition may raise some other issue, we agree with the State that the mother has waived it through insufficient argument and lack of citation to authority. *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments."); Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

with Ryan to conclude transfer of custody and guardianship is appropriate. The court found:

> The Department's services to this family since the last review have exceeded reasonable efforts to meet the permanency goal of reunification. . . . The Department has provided services to address the substance abuse, domestic violence and mental health issues of the parents. Ryan is tackling his mental health issues, Danielle is starting to but only grudgingly. Time is running out. Her children have been in limbo almost a year and a half, most of that time was wasted by useless and counterproductive denial. It is time to face up to the rest of their problems and actually change.
>
> [A.D.'s] case is difficult. He has been in limbo for almost a year and a half. He wants permanency with his step father and brother [G.G.] He is an intelligent, well spoken, and opinionated 7th grader. He does not want to reunify with his mother, especially if she is going to be with or return to [R.H.] Since it is clear that she and [R.H.] are maintaining a close relationship, that will not be possible for [A.D.] It is therefore the decision of the court to transition [A.D.] into the Guardianship of his step father, Joseph.

After a permanency hearing, the court must take one of the statutorily delineated options. *See* Iowa Code § 232.104(2). Those actions include, among others, continuing placement of the child for six months, transferring guardianship and custody of the child to suitable others, or transferring sole custody of the child from one parent to the other. *Id.* § 232.104(2)(b), (d)(1), (d)(2). Before transferring guardianship and custody to another person, the court must find convincing evidence exists of all the following:

> a. A termination of the parent-child relationship would not be in the best interest of the child.[4]

---

[4] The court set another date for a permanency review hearing in three months. This was primarily to accommodate its finding L.H.'s permanency goal should remain reunification with Danielle and its order to give Danielle another three months to make case progress. At the next review hearing, the court would assess other available permanency options, presumably for A.D. too. The court made no finding why termination would not be in A.D.'s best interests, but Danielle does not raise that issue on appeal.

> b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.
> c. The child cannot be returned to the child's home.

*Id.* § 232.104(4). Danielle only appears to challenge paragraphs (b) and (c). She argues she has found stable housing, attended almost every visitation, and begun addressing her substance-abuse issues. She denies having any relationship with Ryan except "to help him with his personal issues."

A.D. has expressed to social workers that he is afraid of Ryan and does not want to be around him. He fears Ryan will harm him and his mother, as he has done in the past. A.D. also told DHS he wants to continue living with his step-father, Joseph, whom he calls "Dad," and to be with his brother, G.G. The DHS caseworker testified that when Danielle progressed to overnight visitation with L.H., she explained to Danielle that those pick-up and drop-off times were the only interaction she was to have with Ryan, other than emergencies related to L.H. This prohibition was necessary because of A.D.'s feelings about reuniting with his mother if she remained with Ryan and ongoing concerns about Danielle's inability or unwillingness to support and protect A.D. from Ryan's physical abuse.

But, in December 2019, the care coordinator was conducting a routine drop-by at Ryan's house and saw Danielle's van parked outside. When she entered, Danielle attempted to hide from her under the covers of Ryan's bed. Then, Danielle popped out and admitted she was there and had been there all night. At the time, Danielle told the care coordinator she had been at Ryan's house to help him with a broken water pump and ended up staying the night because it was so late. But later, she told the DHS Ryan was having transportation issues. In addition, L.H. told his foster mother two days later he had been at the library with

Ryan and Danielle. The DHS case worker did not think it was typical for four-year-old L.H. to make up such a fact. The care coordinator also testified Danielle told her mother and sister she was seeing more of Ryan than she let on to DHS.

On our review of the lengthy record in this case, we find Danielle has been offered extensive services to address her substance-abuse, domestic-violence, and mental-health issues. At the permanency hearing, she had completed a substance-abuse class but made little meaningful progress in any other area of the case plan. At the time of the hearing, she was not receiving any therapy services or mental-health medication.

We also reach the same conclusion as the district court on Danielle's ongoing relationship with Ryan. The juvenile court did not credit Danielle's statements and changing story about what she was doing at Ryan's house in December, and her reason is not particularly relevant. What is relevant is that she was told to not have contact with him outside of childcare exchanges or emergencies, did so anyway, and lied to DHS about it. Given the lengthy and brutal history of Ryan's physical abuse against Danielle and A.D., along with Danielle's recent denial and minimization of that history, it is concerning that Danielle continues to maintain contact with Ryan. She admitted being there overnight, justifying the court's conclusion she and Ryan are maintaining an intimate relationship despite telling DHS they are not.

The juvenile court also credited A.D.'s intelligence and maturity in expressing a desire to remain with his step-father and not be reunited with Danielle if she continues to see Ryan. His opinion must be given its due weight in permanency planning. *See id.* § 232.14(3)(a). Danielle also has not been

receiving any therapy services or mental-health medication, part of her ongoing denial of ordered services. Accordingly, we agree with the juvenile court that A.D. cannot be returned to his mother's home, and a different permanency option must be taken. A.D. has expressed a desire to stay with his brother and step-father, who is a willing guardian. Finding no grounds for reversal, we affirm the permanency order of the juvenile court transferring custody and guardianship to Joseph.

**AFFIRMED.**