# IN THE COURT OF APPEALS OF IOWA

No. 20-0562
Filed September 2, 2020

**IN THE INTEREST OF B.F., B.L., and B.L.,**
**Minor Children,**

**K.M., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother appeals the termination of her legal relationship with three children. **AFFIRMED.**

Shane P. O'Toole, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kelsey Lynn Knight of Carr Law Firm, PLC, Des Moines, guardian ad litem for minor children and attorney for Ba.L and Bl.L.

Erin Romar of Youth Law Center, Des Moines, attorney for B.F.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

A mother, Katie, appeals the juvenile court order ending her parental ties to three children—ages ten, five, and three.[1] Katie was undergoing inpatient substance-abuse treatment at the time of the termination hearing but still asked for the return of the children. Her more realistic request was for another six months to work toward reunification. She renews that request on appeal. She also asserts the termination of her parental rights will be "far more detrimental to her children than any danger perceived by not terminating." After our independent review of the record, we reject Katie's claims and affirm the termination order.[2]

In reaching that result, we focus on the futures of Katie's two sons, B.F., born in 2009, and Ba.L., born in 2014, and one daughter, Bl.L., born in 2016.[3] Both boys have serious mental-health challenges. The older son, B.F., is diagnosed with attention deficit hyperactivity disorder (ADHD) and oppositional defiance disorder (ODD). He spent nine months in a psychiatric medical institute for children (PMIC) after the court removed him from Katie's care. The younger son, Ba.L., receives therapy for autism sensory processing disorder and takes

---

[1] These ages relate to the date of the combined permanency and termination hearing in November 2019.

[2] We review termination orders de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We give weight to the juvenile court's factual findings, but they do not bind us. *Id.* The State has the burden to show by clear and convincing evidence the grounds to support termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Our first priority is determining the best interests of the children. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying safety and the need for a permanent home as the "defining elements" in the best-interests determination).

[3] B.F.'s father is Dalton. Brandon is the father of the two younger children. The juvenile court terminated the parental rights of both Dalton and Brandon, and neither father appeals.

medication for anxiety. His learning skills improved while in foster care, but he remained unable to communicate orally. The daughter, Bl.L., also attends therapy for stress-related behaviors.

Much of the children's trauma, especially B.F.'s distress, stems from witnessing domestic violence in their home. Between August 2014 and November 2017, the Iowa Department of Human Services (DHS) launched nine investigations into either the assaults by Brandon against Katie or parental abuse and neglect of the children. In February 2018, the juvenile court approved the DHS removal of B.F. from the home, finding that Katie physically abused him and "[t]he parents' unresolved domestic violence created ongoing trauma for [B.F.]." After B.F. and Katie started family therapy in July, the court returned B.F. home. Just two months later, B.F. found Katie unconscious after she overdosed on cocaine and methamphetamine while two children were home. After that incident, the court removed all three children from her custody and placed them in foster care. Later that fall, B.F. was hospitalized for what his foster family described as "out-of-control" behavior.

Meanwhile, Katie entered inpatient substance-abuse treatment at the House of Mercy in October. It was the first of three unsuccessful efforts to complete inpatient treatment. Throughout 2019, Katie acted erratically during visitations with the children, vacillating between yelling at them and ignoring them. Her ongoing use of illicit drugs fueled her instability. During a substance-abuse evaluation in February, she admitted injecting methamphetamine daily, sometimes more than three times a day. Based on that evidence, the evaluator determined Katie met the DSM-V criteria for having a severe substance-related disorder.

Again in June, she received another substance-abuse evaluation, where she was found to be abusing both methamphetamine and heroin two to three times a day or sometimes more.

At the time of the termination hearing in November, Katie was living at Clearview Recovery in Prairie City—her fourth try at inpatient treatment.[4]  She testified she was doing well and expected to "graduate" to the House of Mercy in December 2019.  She believed all three children could live with her at either facility until she completed her program.  In the alternative, Katie urged the court to defer permanency for six months so that she could make some difficult transitions to new living arrangements and new therapists for her children.

The juvenile court declined, granting the State's petition to terminate Katie's parental rights based on Iowa Code section 232.116(1) (2019), paragraph (f) and (*l*) for her two sons and paragraphs (h) and (*l*) for her daughter.  To contest the termination order, Katie filed a timely petition on appeal.

In her first appellate issue, she contends the juvenile court erred in refusing to grant "an additional six months to work toward recovery and return her children to her care."  To grant an extension, a juvenile court must decide "that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period."  Iowa Code § 232.104(2)(b).  This record does not support an extension.  Katie highlights the progress she made with sobriety, substance-abuse treatment, and mental-health counseling leading up to the termination hearing.  While we applaud Katie's persistence, her repeated struggle

---

[4] Before entering Clearview, Katie was at the Polk County jail on convictions for theft and attempted burglary.

to succeed in a series of inpatient treatment programs does not instill confidence in her ability to provide a secure and stable environment for her three children within six months. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[W]e must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future.").

We share this opinion expressed by the children's guardian ad litem (GAL):

> Katie has not only not completed Clearview's program, she has had no time to prove she can remain sober in society. There is also the issue that Katie consistently has struggled to parent all 3 children at a time. She's currently only having one visit with the children every week and hasn't progressed past supervised visits. Under the circumstances and the amount of time this case has already been open, Katie's progress is just too little too late. The undersigned cannot recommend a return of the children or an extension of time.

Katie next challenges two of the three statutory grounds for termination. She argues the State failed to meet its burden of proof under paragraphs (f) and (h). She does not contest the State's proof under paragraph (*l*). "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015). Katie's failure to advance an argument under paragraph (*l*) waives any claim of error related to that ground.[5] *In re N.S.*,

---

[5] Section 232.116(1)(*l*) applies when the evidence shows:
>    (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
>    (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
>    (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

No. 14-1375, 2014 WL 5253291, at *3 (Iowa Ct. App. Oct. 15, 2014) (citing *Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.")). Lacking any challenge to that alternative basis, we affirm the juvenile court's order finding clear and convincing evidence to terminate under paragraph (*l*).

Finally, we turn to Katie's claim that termination of her parental rights was not in the children's best interests. She contends termination poses a greater detriment to the children's welfare than the "perceived danger" of preserving parental rights. She also argues the danger of not terminating could be addressed "through continued individual therapy and counseling and permanency could be achieved through another planned living arrangement."

Starting at that last reference, we assume Katie's attorney means "another planned permanent living arrangement" or APPLA, which Iowa Code section 232.104(2)(d)(4) provides as a placement option for children who are at least sixteen years old. Given the young ages of B.F., Ba.L., and Bl.L., APPLA is not appropriate for these three children. *See In re V.B.*, No. 17-0077, 2017 WL 1095074, at *2 (Iowa Ct. App. Mar. 22, 2017); *see also In re C.W.*, No. 13-0129, 2013 WL 2146237, at *2 (Iowa Ct. App. May 15, 2013) (discussing APPLA as "the least preferred permanency plan").

The rest of Katie's argument melds the best-interests framework under Iowa Code section 232.116(2) with the exception in section 232.116(3)(c). Section 232.116(2) requires courts to give primary consideration to the children's safety,

---

Although Katie waived her challenge to this ground, we find clear and convincing evidence in the record to support each element.

to the best placement to further their long-term nurturing and growth and to their physical, mental, and emotional needs. Section 232.116(3)(c) allows a juvenile court to deny a petition to terminate if the parent presents "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See In re A.S.*, 906 N.W.2d 467, 476–77 (Iowa 2018) (holding parent resisting termination bears burden to establish exception under section 232.116(3)).

These children, especially B.F., have not been safe or nurtured while in Katie's home. She has not met their emotional needs. Katie contends she and the children have a "close and loving relationship." But the record belies that claim. As for B.F., the DHS worker testified that he loves Katie and she loves him but described their relationship as "unhealthy" given his anger and frustrations with his mother's inconsistency. The younger children have also suffered from the uncertainty of their situation. Their GAL noted both were doing well in their foster homes, though Bl.L. sometimes displays "emotional dysregulation" surrounding visits with Katie and Ba.L "occasionally demonstrates unsafe behaviors." And as the juvenile court found, Katie "has negatively impacted her bond with the children by her repeated incarcerations, erratic behaviors during visits and general instability." Neither section 232.116(2) nor section 232.116(3)(c) compels reversal of the termination order.

**AFFIRMED.**