# IN THE COURT OF APPEALS OF IOWA

No. 20-0573
Filed September 2, 2020

**IN THE INTEREST OF A.R., M.T., I.T., L.M., and M.M.,**
**Minor Children,**

**K.R., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

    The mother appeals the termination of her parental rights to her five children. **AFFIRMED.**

    Shane P. O'Toole, Des Moines, for appellant mother.

    Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

    Dusty Clements of Clements Law & Mediation, Newton, attorney, and guardian ad litem for minor children.

    Considered by Doyle, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

The mother appeals the termination of her parental rights to her five children, A.R., M.T., I.T., L,M., and M.M., who ranged in ages from nine to one years old, respectively, at the time of the March 2020 termination hearing.[1] The juvenile court terminated her rights under Iowa Code section 232.116(1)(b), (e), (f), and (h) (2020). On appeal, the mother challenges the statutory grounds for termination, argues the loss of her rights is not in the children's best interests, and maintains termination would harm the children so the parent-child relationships should be saved. Alternatively, she maintains she should be given six more months to work toward reunification.

**I. Background Facts and Proceedings.**

In July 2018, the Iowa Department of Human Services (DHS) received reports the mother and maternal grandmother had a physical altercation in front of the children, both adults were using methamphetamine while the children were in their care, and the children were not adequately fed. As a result, DHS got involved with this family, which at the time consisted of just the mother and the three oldest children—the youngest two children, twins, were not yet born. DHS learned the mother and children were homeless. The mother, who was about three months pregnant with twins, first denied using methamphetamine recently, claiming she had not used during her pregnancy.

---

[1] This case impacts four different fathers. The parental rights of A.R.'s father were terminated. He does not appeal.

L.M. and M.M. share a father, and his rights were also terminated. Their father does not appeal.

The State did not seek to terminate the parental rights of either M.T.'s father or I.T.'s father, and their rights were not terminated when the mother's rights were.

The three children were formally removed from the mother's care on July 13, 2018. The mother participated in few visits soon afterward but by early August, she was no longer in contact with DHS or the children. She missed at least one court hearing during this period. Her lack of involvement continued until she reappeared in late November. She entered residential substance-abuse treatment on November 28, 2018. While in treatment, she admitted she had been using methamphetamine daily.

The mother did not resume visits with her children until late December 2018. According to the notes from the family safety, risk, and permanency (FSRP) worker who supervised the visit, M.T. and I.T. "gave no indication they knew who [the mother] was" when the visit began.

The twins were born in January 2019, and they experienced symptoms of withdrawal. The mother remained in residential treatment, and the twins were at first left in her care at the residential facility. Then, in late February, the mother asked that the twins be removed, citing feelings of being overwhelmed and needing the chance to focus on her sobriety. The youngest two children were formally removed from the mother's care soon after.

The mother successfully completed the substance-abuse treatment program on April 1, 2019. Although she struggled at times to provide the children with food or diapers at their visits and did not always have stable housing, she was candid with DHS about any issues she was having. And at the time of the

permanency hearing in July, she was employed and apparently maintaining her sobriety.[2]

On July 17, 2019, the court gave the mother six more months to work toward reunification. It found "[c]ompelling reasons not to terminate parental rights and [to] continue permanency," including, "Mother's participation in mental health and substance abuse treatment; mother[] is currently employed and has recently obtained housing; and Mother having provided clean drug screens." All parties agreed the mother's visits would be moved to semi-supervised.

The mother had a few semi-supervised visits with the children that seemed to go well, but by late July, she began frequently missing visits, failing to respond to the FSRP worker in regard to discussing visits, and often showing up late to the visits she did attend. Additionally, the FSRP worker began noting scabs and sores on the mother's arms. Visits were returned to fully supervised in August 2019.

By mid-September, the mother was again without a residence. She stopped responding to contacts from the FSRP worker and stopped having visits with the children. She went another period without contacting anyone involved with the cases—until October when DHS learned the mother was in county jail on a theft charge and met with her there. The mother admitted she had relapsed on methamphetamine. She remained in jail until late November 2019. Even after her release, the mother largely failed to communicate with FSRP and did not attend a visit with her children until February 2020.

---

[2] The mother provided three drug tests during this period that were negative for substances, but she also "no showed" for four drug tests.

At the time of the termination hearing in March 2020, the mother had housing but it was not adequate for the children. She had recently obtained employment but seemed unclear how much she earned. She testified she had not used methamphetamine since before her October 2019 arrest, but the substance-abuse evaluation she obtained in late February seemed to belie this claim. According to the preparer of the substance-abuse evaluation, "At the time of th[e] assessment, [the mother] appear[ed] to be slow to respon[d with] some answers and appeared with glazed eyes. [She] struggled to answer questions in a straight forward manner that may indicate either use or come down from use at the time of the assessment." Additionally, the mother "report[ed] that she [did not] know if she [was] ready to end her substance use as it helps to not feel her feelings."

The court terminated the mother's rights to all five children, relying, in part, upon the facts that she had no visits with the children in October, November, or December 2019; one in January 2020; and one or two in February. For most of the period, the mother was homeless, not attending therapy appointments, and out of contact with DHS. She provided no financial support for the children and did not check in with their placements to see how the children were doing.

The mother appeals.

**II. Standard of Review.**

Our review of termination-of-parental-rights proceedings is de novo. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).

**III. Standard of Review.**

**Statutory Grounds.** The juvenile court terminated the mother's parental rights to all five children under Iowa Code section 232.116(1)(b) and (e) (2020).

Because of the different age requirements within the paragraphs, the court also terminated the mother's rights to A.R. under 232.116(1)(f) (child four or older) and to the other four children under 232.116(1)(h) (children three and younger).

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm on any ground we find supported by clear and convincing evidence in the record. *Id.* at 774. For the court to terminate under section 232.116(1)(e), it must find:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

The mother purports to challenge the termination of her rights under paragraph (e), but her entire challenge is as follows: "Mother argues that the State of Iowa has not met the burden and because the State has not met its burden, the Court erred in determining that termination of the K.R.'s parental rights was appropriate and said order should be reversed." Claiming the State "has not met its burden" without specifying the elements or fact findings she contests is not enough. *See* Iowa R. App. P. 6.201(1)(d) ("The petition on appeal shall substantially comply with form 5 in rule 6.1401."); Iowa R. App. P. 6.1401–Form 5 ("[S]tate what findings of

fact or conclusions of law the district court made with which you disagree and why, generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your position on appeal. . . . *General conclusions, such as 'the trial court's ruling is not supported by law or the facts' are not acceptable.*" (emphasis added)); *see also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [a party] might have made and then search for legal authority and comb the record for facts to support such arguments."). While we acknowledge the expedited nature of appeals in termination-of-parental-rights cases, *see generally* Iowa R. App. P. 6.201, we conclude the mother waived any alleged error under section 232.116(1)(e) and affirm as to that statutory ground.[3]

---

[3] That said, the juvenile court also terminated the mother's rights under paragraphs (f) (as to A.R.) and (h) (as to the youngest four children) of section 232.116(1). Each of these paragraphs provide that termination is authorized when several elements are met, including that the children cannot be returned to the parent's care at the time of the termination hearing. On appeal, the only element the mother challenges is whether the State proved that the children could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4), (h)(4). But the mother confirmed during her testimony at the termination hearing that she was unable to resume caring for the children at that time. When asked if she wanted the court to return her children that day, she testified, "If I had a bigger place for them all to be, yes, but that will take time." She was then asked how long she thought she needed, and she testified:

> I would like a month. I mean, going to be reasonable. You know, that's a lot of kids. We actually had an agreement at my last family team meeting that we—when it came back to the reuniting party, that we were going to stair step them back to me, because there's so many of them.

Later, she changed her answer to say she could be "ready for all five [children] to be in [her] house" "[w]ithin a couple months." When asked directly if she "recognize[d] the fact that the children couldn't be returned to [her] care" that day, she answered, "Yes."

**Best interests.** The mother maintains termination of her rights is not in the children's best interests. *See* Iowa Code § 232.116(2). We disagree. The mother's oldest three children had been out of her care about nineteen months at the time of the termination hearing, and the one-year-old twins had been out of her care for more than twelve months—almost their entire lives. The mother was no closer to reunifying with her children in March 2020 than she was when DHS became involved in July 2018. During the time in-between, the mother chose to absent herself from her children's lives for two separate multiple-month periods. She proved—through her actions and her own words—that she cannot care for these children. The twins were first left in her care after their birth, and she asked for them to be removed. When she was given semi-supervised visits with her children in July 2019, she regressed almost immediately. Even at the termination hearing, the mother repeatedly testified about her concern with caring for five children by herself at once. These children need reliable and responsible parenting and a steady home; the mother cannot provide those things. The termination of her rights is in their best interests.

**Permissive Factor.** Within her argument about the best interests of her children, the mother also claims that terminating her rights "is far more detrimental to her children than any danger perceived by not terminating." If this is a reference to the permissive exception to termination found within section 232.116(3)(c), the

---

The mother did not claim at the termination hearing that the children could be returned to her at that time, so she cannot now take that position on appeal as that argument was not preserved. Even so, the State proved the children could not be returned to her care at that time, so we also affirm termination of her rights under section 232.116(1)(f) and (h).

mother's argument is not preserved for our review. As the parent contesting termination, the mother had the burden to prove a permissive factor applied. *See In re A.S.*, 906 N.W.2d 467, 479 (Iowa 2018). But, according to the juvenile court, "The mother presented no evidence that any of the exceptions to termination apply in this case." Her failure to raise the issue or present evidence to support this position to the juvenile court prevents her from raising this argument on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

**Extra time.** Finally, the mother asks for more time to work toward reunification with the children. The court can only give the parent additional time if it determines the need for removal of the children from the parent's care will no longer exist in six months. *See* Iowa Code §§ 232.117(5) (allowing the court, after a termination hearing, to not order termination but instead enter an order in accordance with section 232.104), 232.104(2)(b) (allowing the court to delay permanency for six months if the need for removal will no longer exist after the extension). While the mother testified that she could resume caring for the children within six months, little else supports a finding that she will be able to do so. The mother is a long-time addict, and, according to her recent substance-abuse evaluation, it is not clear she is ready to change. She did not have a home for the children and it is not clear how she will afford one—even if given six more months. Importantly, the mother was already given a six-month extension in July 2019, and she failed to use that time to make the necessary positive changes. These children cannot afford for us to give her more. *See C.B.*, 611 N.W.2d at 495 ("[T]he

patience with parents must yield to needs of the child[ren]); *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987) ("[P]atience with parents can soon translate into intolerable hardship for their children.").

We affirm the termination of the mother's parental rights to all five children.

**AFFIRMED.**