**IN THE COURT OF APPEALS OF IOWA**

No. 21-1690
Filed January 12, 2022

**IN THE INTEREST OF M.D.,**
**Minor Child,**

**C.C., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, District Associate Judge.

The mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Robert W. Davison, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

The juvenile court terminated the mother's parental rights to her child, M.D., born in August 2020,[1] under Iowa Code section 232.116(1)(g) and (h) (2021).[2] On appeal, the mother purports to challenge the statutory grounds, argues termination of her rights is not in the child's best interests, and claims the closeness of her bond with the child weighs against termination.

"We review termination of parental rights de novo." *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Termination of parental rights under chapter 232 generally consists of a three-step process. *See id.* at 294. But our review on appeal is confined to those issues actually raised and briefed by the parent who challenges the termination. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("We exercise our de novo review only with respect to issues raised and preserved at trial. Similarly, our review is confined to those propositions relied upon by the appellant for reversal on appeal." (citation omitted)).

First, we consider whether the State proved the statutory grounds for termination. We can affirm on any ground supported by clear and convincing evidence, *A.B.*, 957 N.W.2d at 294, and we choose to consider paragraph (h). The court may terminate parental rights under section 232.116(1)(h) when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

[1] The mother previously lost her parental rights to other children.
[2] The biological father of M.D. is unknown. His legal father did not participate in services and did not attend the termination hearing. No putative father ever came forward.
    The juvenile court terminated the parental rights of "[the legal father] and any unknown father or anyone claiming to be the father of the minor child." No father appeals.

> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

We question whether the mother properly challenges this ground for termination, as her argument focuses on whether she could take over caring for M.D after she makes some additional changes. And, in deciding whether the elements for termination were proved, the court is to consider the facts as they existed at the time of the termination hearing—not what the parent hopes the facts will be in the future. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" in section 232.116(1)(h)(4) to mean "at the time of the termination hearing").

But, giving her the benefit of the doubt, we consider whether the State proved M.D. could not be returned to the mother's care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4). The child was removed from the mother's care shortly after birth when the umbilical cord tested positive for methamphetamine and amphetamines. At the time of the termination trial, about one year later, the mother had yet to complete substance-abuse treatment. She missed thirty-four of the thirty-seven drug tests she was asked to complete. The three tests the mother submitted to—all of which were in December 2020—were positive for methamphetamine. And she admitted to the family services specialist (FSS) that she used methamphetamine in June 2021. In the weeks leading up to the termination trial, the mother reported to the FSS that she had recently become employed and was starting mental-health therapy, but the mother

did not offer any evidence at trial to support these claims and previous, similar reports had proved untrue. We agree with the juvenile court that M.D. could not be returned to the mother's care.

Next, the mother argues termination of her rights is not in M.D.'s best interests. Both the FSS and the social worker testified about the good relationship M.D. and the mother share. The mother does well with hands-on parenting during the twice-weekly two-hour supervised visits, and she had almost daily phone contact with the infant through the support of the foster parent. But M.D., who was nearly one year old at the time of the termination hearing, had spent less than one month of his life in his mother's care. He has serious ongoing medical needs, which require a caregiver who will schedule medical appointments, follow through with attending, and implement the needed treatments. For the great majority of his life, M.D. has had to rely on other adults to meet those needs. M.D. also requires the stability and safety that all children deserve. *See In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially) ("A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests."). His need for responsible, reliable parenting supports termination of the mother's parental rights. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable.").

The mother argues the court should have declined to terminate her parental rights because "[t]ere is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). When deciding whether to apply this

exception to save the parent-child relationship, "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs." *D.W.*, 791 N.W.2d at 709. The mother has not convinced us the child will be so disadvantaged by termination that the relationship should be saved in spite of all of the considerations weighing in favor of termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (providing the parent bears the burden to establish an exception to termination).

We affirm the termination of the mother's parental rights to M.D.

**AFFIRMED.**