# IN THE COURT OF APPEALS OF IOWA

No. 21-1894
Filed February 16, 2022

**IN THE INTEREST OF T.T.,**
**Minor Child,**

**J.T., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Mark C. Cord,
District Associate Judge.


        A father appeals the termination of his parental rights.  **AFFIRMED.**


        Douglas L. Roehrich, Sioux City, for appellant father.

        Thomas J. Miller, Attorney General, Ellen Ramsey-Kacena, Assistant
Attorney General, for appellee State.

        Jessica Noll, Sioux City, attorney and guardian ad litem for minor child.


        Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

While the father, J.T., was incarcerated, the juvenile court terminated his parental rights to T.T.[1] under several grounds: paragraphs (b), (e), and (h) of Iowa Code section 232.116(1) (2021).  Looking forward, the father maintained he could parent his two-and-a-half-year-old child if given the chance and that the work he did in prison showed his resolve.  Because, he argues, he will soon be released, the juvenile court should have given him that chance.

More narrowly, on appeal, the father asserts it is not in the child's best interests to terminate his parental rights and that he should be allowed more time to reunify with the child.  Because he does not challenge the grounds for termination, we only address the best-interests argument and his request for more time.  *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").  The father has the burden to establish an exception to termination.  *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).  But in our de novo review, *see In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021) (noting our review of termination proceedings is de novo), we find his requests unwarranted.

Believing he might be released within a month, the father testified that he is "ready, willing, and able" to take over parental care and he intends to cease all criminal activity going forward.  But a person's history can forecast the future.

---

[1] The mother's parental rights to T.T. and her other, older child were terminated in the same proceeding, and she does not appeal.  The two brothers have been residing in the same foster home since August 2021.  The mother also had parental rights to another child terminated in another proceeding in 2020.

Here, the father's criminal history is extensive.[2] The father's incarceration history creates a barrier to his role as a parent. During the child's young life, the father spent time in jail in March 2020 until released in June. He was arrested again in September and sentenced to a fifteen-year term.[3] So the father was incarcerated continuously from the time of removal in January 2021 up to the time of the termination hearing in October. He testified he recently had a parole hearing and that, at the time of the termination hearing, he was waiting to hear from the parole board about his fate. He also pointed to classes he attended in prison, such as substance-abuse treatment, as being a consideration for the juvenile court. From the correctional facility, the father testified he would be released "possibly" in about the next month. But the juvenile court called it "a hope and a prayer" that the parole board would release the father. Nothing in the record gives us the ability to better predict when the father would be available to parent.

But our best-interests analysis involves more than when the father might be released. Our focus is on certain primary considerations: "the child's safety," "the

---

[2] The juvenile court summarized the history as:

> felony theft, aggravated eluding, misdemeanor theft (5 times), simple eluding (2 times), serious eluding, operate without owner's consent, assault, probation violation (5 times), possession of drug paraphernalia (3 times), parole violation, fail to obey (2 times), interference (2 times), false police report, disorderly conduct, [operating while intoxicated (OWI)], possession of marijuana, public intoxication, no contact order violation, OWI 2nd, OWI 3rd, trespassing, carrying weapon, felony eluding, leaving scene of personal injury accident, child endangerment, larceny of vehicle, and multiple driving offenses. [The father] has been in prison in Iowa at least 4 times and was charged with Driving While License Suspended on [the child's] date of birth. He has been on parole "countless" times.

[3] The father was convicted of OWI, third offense—a felony—and the habitual offender sentencing enhancement was applied. The date of discharge is in 2027.

best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (referencing the best-interest framework of section 232.116(2)). Zeroing in on the father's relationship with the child, he has not seen his child face-to-face since February 2020 when the child was about eight months old, more than twenty months before the termination hearing. The father did not participate in any services offered after the child's birth. Before his arrests, he took no action to parent the child or remove the child from the mother's care. Instead, the father found time to commit criminal acts. Because of the lack of any contact, the father had no developed relationship or bond with the child. The child does not know his father. The father has not prioritized financial, emotional, or physical support for the child. In evaluating the child's best interests, "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). With all of the best-interests considerations in mind, we find termination is proper.

Finally, the father makes a passing argument that there would be no harm in allowing him more time to complete his sentence and reunify with the child. Without considering whether this argument was waived by the failure to cite authority or otherwise develop the context, we note the father's lengthy incarceration impacted his ability to prove he could care for the child. *See In re D.S.,* 806 N.W.2d 458, 474 (Iowa Ct. App. 2011) (noting the parent's decisions and lifestyle impeded her ability to learn to care for the child). Without knowing for

certain when the father might be released and if, even then, he would dedicate himself to providing for the child's needs and safety, we see no reason to interfere with the child's current need for a permanent home.

We affirm the termination of the father's parental rights.

**AFFIRMED.**