# IN THE COURT OF APPEALS OF IOWA

No. 22-0896
Filed August 3, 2022

**IN THE INTEREST OF S.M., N.N.-M., and S.M.,**
**Minor Children,**

**L.N., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Hancock County, Karen Kaufman

Salic, District Associate Judge.


        The mother appeals termination of her parental rights to three children.

**AFFIRMED.**


        Cameron M. Sprecher of Jorgensen Law Office, Mason City, for appellant

mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        Theodore Hovda, Garner, attorney and guardian ad litem for minor children.


        Considered by Bower, C.J., Badding, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**BLANE, Senior Judge.**

The mother appeals the termination of her parental rights to three children, ages eleven, seven, and six.[1] She contends the State failed to prove the statutory grounds, termination is not in the children's best interests, a termination exception applies, and she should be given extra time. Because her appeal challenges the wrong statutory ground and does not address one ground at all, she has waived any error related to those grounds. And because she is not able to provide a safe and stable living situation for the children, we find her other challenges lack merit. Accordingly, we affirm the termination.

**I. FACTS AND PRIOR PROCEEDINGS.**

This family originally came to the attention of the Iowa Department of Human Services (DHS) in November 2017 due to the mother's and father's substance-abuse and mental-health issues. The mother moved out of the home while the children remained with the father. The father utilized DHS's services, and the child-in-need-of-assistance (CINA) case closed in September 2019. The mother took no part in the case or services. She instead spent the time living with her mother in Minnesota.

Unfortunately, eighteen months after the first CINA case closed, the children were removed from the father a second time. In February 2021, he was arrested for selling methamphetamine from the home. At the time, concerns arose about a neighbor, who is a sex offender, grooming or having sexual contact with then-ten-year-old N.N.-M. DHS later learned that the previous November, the father let

---

[1] The juvenile court also terminated the parental rights of the children's father, but he does not appeal.

N.N.-M. go on a trip to another state with his girlfriend, who exposed the little girl to people selling drugs. At removal, there were also considerable concerns about neglect of the children regarding their inconsistent school attendance, behavioral problems, and inadequate medical care. In the vacuum, N.N.-M. took on the primary parenting role for her two younger siblings.

Since this second removal, the mother has become more involved in the case. But her success at necessary services has been mixed. She has been in and out of substance-abuse treatment facilities but unable to demonstrate sustained sobriety. Several drug tests have been positive for various substances. She has not engaged mental-health services. At the time of the termination hearing, she was still attending in-patient substance abuse treatment and had no residence of her own. Her only employment during the CINA case was at McDonalds starting a few weeks before the termination hearing. Visitations were also mixed with the mother allowing N.N.-M. to complete most of the parenting duties. During one weekend visit, the mother took the children to a party in another town and told them to lie about it to service providers. Her substance test from that weekend was positive for alcohol.

Meanwhile, the children are all doing well together in their foster home. The foster family is seeing to their needs for mental-health therapy, medication, and educational support. They each face significant emotional, behavioral, and cognitive challenges.

After fifteen months out of the home, the juvenile court terminated the mother's rights under Iowa Code section 232.116(1) (2022), paragraphs (f) and (*l*). The mother appeals.

## II.  SCOPE AND STANDARD OF REVIEW.

We review termination proceedings de novo.  *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).  We respect the juvenile court's factual findings but are not required to adopt them.  *Id.*  The State must prove the grounds for termination by clear and convincing evidence.  *Id.*

We apply a three-step analysis to review termination of parental rights cases.  *Id.*  "First, we consider whether there are statutory grounds for termination.  Second, we determine whether termination is in the best interest of the child.  Third, we consider whether we should exercise any of the permissive exceptions for termination."  *Id.* (internal citations omitted).

## III.  ANALYSIS.

### A.  Statutory grounds.

The mother contends the State failed to prove the statutory grounds for termination under Iowa Code section 232.116(1)(h), subparagraph (4) by clear and convincing evidence.  But the court terminated parental rights under Iowa Code section 232.116(1), paragraphs (f) and (*l*).  Her failure to challenge termination on those paragraphs waives any claim of error on those grounds.[2]  *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."); *see also In re N.N.*, No. 21-1978, 2022 WL 610318, at *1 (Iowa Ct. App. Mar. 2, 2022).[3]

---

[2] We generally "decline to elevate form over substance" in court filings.  *Williams v. Bullock*, 960 N.W.2d 473, 481 (Iowa 2021).  But even if we addressed the "cannot be returned" language common to Iowa Code section 232.116(1) paragraphs (f) and (h), the mother waived another ground entirely.

[3] This case, in which the same attorney represented the appellant mother, was also affirmed by this court after the attorney failed to raise the correct statutory

Accordingly, we affirm the juvenile court's findings termination is appropriate under those paragraphs.

### B. Best interests.

Next, the mother argues termination of parental rights is not in the children's best interests under Iowa Code section 232.116(2).[4]  Under that section, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).

In light of those factors, the record is clear and convincing that it is in the children's best interests to terminate the mother's rights.  The mother has not succeeded in the safety goals to obtain custody or placement of the children.  Although she has had some success with substance-abuse treatment in the past, she has not demonstrated any significant period of sobriety outside of an inpatient treatment setting.  She has not sought ordered mental-health services.  And she has not cooperated with DHS in its efforts to unite her with the children.  The children were subjects of a previous CINA proceeding, which closed through their father's efforts in 2019.  The mother did not take part in that case; she lived in Minnesota with the children's maternal grandmother.  When this case was opened with removal of the children from their father in February 2021, the mother became involved and had more in-person interactions.  But the children struggled with

---

grounds on appeal.  *N.N.*, 2022 WL 610318, at *1.  It was filed several months before the petitions on appeal were submitted in the present case.

[4] In the same section of her petition on appeal, the mother argues termination of her parental rights would be contrary to Iowa Code section 232.116(3)(c), which is different from the subsection (2) best-interests step.  Because she minimally argues under section 232.116(3)(c), we will address it separately.

maladaptive behaviors after her visits. The mother also has not demonstrated an ability to be a stable support for her children—she had no home and was unemployed until just weeks before the termination hearing. She cannot keep the children safe or see to their physical, mental, or emotional needs. It is in their best interests to terminate her parental rights.

## C. Statutory exceptions.

The mother next argues termination would be "highly detrimental to the children due to the closeness of the parent-child relationship." *See* Iowa Code § 232.116(3)(c). To prevail, she must show that the harm outweighs the concerns over her inability to care for the children. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs.").

The mother argues the guardian ad litem (GAL) told the juvenile court that her oldest child, N.N.-M., wants to go back home with her mother and preferred to stay with her mother.[5] The GAL recommended giving the mother extra time to realize N.N.-M.'s wish.

---

[5] N.N.-M. also wrote a letter to the court, submitted with the petition on appeal. This letter does not appear in the juvenile court record, so we do not consider it. And we consider N.N.-M.'s expressed preference only to the extent it impacts whether she will suffer detriment or disadvantage due to the closeness of the parent-child bond. *See* Iowa Code § 232.116(3)(c); *cf. id.* § 232.116(2)(b)(2) (directing the court to consider, as part of the general best interests step, whether there has been an "integration into a foster family" including the "reasonable preference of the child" if "the child has sufficient capacity to express" such preference). No argument was made below or on appeal about the children's integration into the foster family.

But what the record shows is that the oldest child has expressed different views over the life of the case about whether she wants to live with her mother. The GAL reported his conversation with N.N.-M. in which she said she "would like to see her entire family reunited" but "she knew that was not a likely outcome, so she expressed a desire that she and her two siblings be reunited with their mother." The DHS caseworker testified N.N.-M. "just wants to be able to move forward. She wants to stay where she is [with foster parents]; she wants to have a normal life. She loves her parents, but she doesn't want to bounce back and forth." The caseworker also testified the other children love their parents. But she did not agree that they shared a strong bond. In addition, the family support specialist overheard a conversation between N.N.-M. and the mother where the mother encouraged her daughter to tell service providers she wants to live with her mom. And that is not the only time the mother has appeared to "coach" her children what to say to service providers. On this evidence, we do not think the mother has shown termination would be detrimental or disadvantageous to N.N.-M., let alone the other children.

**D. Extension of time.**

Finally, the mother argues the juvenile court should have given her additional time to work toward reunification. To grant an extension of six months, under Iowa Code section 232.104(2)(b), the court must determine the need for removal will no longer exist at the end of that time. *In re A.A.G.*, 708 N.W.2d 85, 89 (Iowa Ct App. 2005).

We have no reason to believe the mother will be able to resume care of the children in six months. Her lack of progress leaves the children in danger from her

unresolved substance-abuse and mental-health issues.  And she remains unstable in terms of housing and employment.  We consider that this is the second go-around for these children since the initial removal in 2017.  The mother's issues remain the same. The children need permanency.  An extension of time will not likely result in a change and is not warranted.

**AFFIRMED.**