# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1306
Filed January 28, 2026

————————————

**In the Interest of C.C., Minor Child,**

**A.C., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Polk County,
The Honorable Brent Pattison, Judge.

————————————

**AFFIRMED**

————————————

Lynn Vogan, State Public Defender, Des Moines, attorney for appellant
mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorney for appellee State.

Audra Faye Saunders of Wasker, Dorr, Wimmer & Marcouiller, P.C., West
Des Moines, attorney and guardian ad litem for minor child.

————————————

Considered without oral argument
by Schumacher, P.J., Langholz, J., and Telleen, S.J.
Opinion by Telleen, S.J.

**TELLEEN, Senior Judge.**

The juvenile court terminated the mother's rights to the child, born in 2014, under Iowa Code section 232.116(1)(f) (2025).[1] The mother now appeals, arguing termination is not in the child's best interests, and alternatively, that the court erred in failing to apply a permissive exception to termination due to the parent-child bond or the option of a guardianship. We affirm the juvenile court's order terminating the mother's parental rights to the child.

## BACKGROUND FACTS AND PROCEEDINGS

The family first received Family Centered Services from the Iowa Department of Health and Human Services in 2015, and again from June 2022 to June 2023. In February 2022, there was a founded child-abuse assessment due to the mother's use of methamphetamine. The mother did not cooperate with the department, and the child was placed with a relative until later that year, and the case was closed in June 2023.

The family again came to the department's attention that November. The department received a child-abuse report that the mother "appear[ed] to again be using illegal substances." The child, then age nine, informed a child protective worker that her mother spent all her time smoking in the bedroom. The department was unable to contact the mother despite mailing letters, leaving voicemails, and visiting the home multiple times. A founded child-abuse assessment resulted due to the mother's methamphetamine use, and the child tested positive for methamphetamine and was placed with a

---

[1] The father's rights were terminated under Iowa Code section 232.116(1)(b), (e), and (f), but he has had no involvement in this case, he was "deported years ago to Mexico," his current location is unknown, and he does not appeal.

foster family. The child was adjudicated as in need of assistance in January 2024.

At the time of the review hearing in June, the mother was still not cooperating with the department and refused to engage in sweat-patch drug testing. Drug testing at the time of the next review hearing in September came back positive for methamphetamine and THC. The department noted that she was engaging in inappropriate conversations with the child during visits, had ceased attending counseling, and no progress was being made towards reunification.

Following the December permanency hearing, the juvenile court found "there has not been the requisite level of progress to return [the child] to her mother's care since the last hearing." It determined that the mother "continues to struggle with substance abuse, homelessness, and service participation." The court did find that the child and mother "have a good relationship" and the mother "does a good job during visits." But that positive relationship also causes the child to struggle "because she does not know where she is going to grow up." At that time, the juvenile court asserted the parent-child relationship precluded termination but also concluded that the mother could not resume custody and that the State's request that the court direct a termination petition was reasonable considering "the mother's struggles and [the child]'s need for permanency." It further found that the mother's issues "undermine any finding that the child could be returned within the next six months."

A hearing on a home study pursuant to the Interstate Compact on the Placement of Children (ICPC) was held in January 2025. The department planned to transition the child into a guardianship with relatives in New York. But the proposed placement family expressed concern that the child was

struggling following a recent visit with the mother and that working with the mother may be difficult. The permanency goal remained guardianship with that placement family. At the next hearing in April, the State, guardian ad litem, and department all recommended that the permanency goal be changed to termination. By that time, the mother had moved to New York and was making the placement family "uncomfortable by demanding contact, name calling, and showing up unexpectedly at a family event," which also led "to some discomfort for [the child]." The mother had also been spotted driving past the placement family's home on multiple occasions. The State then filed its petition to terminate the mother and father's parental rights to the child later that month, citing the lack of progress and the mother testing positive in both of her most recent sweat-patch tests.

At the June 2025 permanency hearing, the mother admitted she was unemployed, had struggled with housing during the pendency of this case, and had been a methamphetamine user for over twenty years. Although the mother contended she had not been permitted to visit the child, the juvenile court noted that she was not refused visitation by the placement family—they simply informed her that visits would need to be arranged in coordination with the department. The juvenile court further found that failure by the department to coordinate such visits was largely due to the mother's sudden and uncommunicated move to New York and her insistence that she could "show up when she wants." Despite the conflict between the placement family and the mother, the placement family reported that the child was doing well in school and had displayed no behavioral issues after settling in to the new home.

Following the hearing, the juvenile court terminated the mother's parental rights. In its order, the juvenile court found that termination, rather than a guardianship, served the child's best interests:

> After a lengthy time in foster care, [the child] is finally placed with loving relatives. They have been caring for her since February of 2025. All indications are that she is thriving in their care. They have helped her get into school, mental health services, and other prosocial activities. [The child] is thriving in their care and feels safe and loved in their home.

> . . . [W]hen the court changed the goal to guardianship at the permanency hearing, the court did not expect that [the mother] would behave the way she did immediately after the hearing. She abruptly moved to New York to be near [the child]. She harassed the [placement family] and made [the child] feel uncomfortable. Although [the department] did not initially do a good job helping with the transition (which was largely due to a change in worker and [the mother]'s abrupt move), when [a department worker] attempted to help, [the mother] was not only unreceptive—she was actively hostile with [the department] and the [placement family]. She told [the department] that the [placement family] had "not seen harassment yet" and she said she did "not care if the police get involved." This does not bode well for a guardianship. . . . It seems likely that guardianship will just lead to family conflict and re-litigation of custody and visitation issues[—]with [the child] in the middle. And the court will not be in a good position to resolve those disputes. [The child], her relatives, and [the mother] all live in a different state—making it very difficult for the court to manage the disputes that are likely to occur. After several years of child welfare system involvement, [the placement family] is right—[the child] deserves for court involvement to be over. Only adoption can provide that kind of permanency.

The mother now appeals the termination of her parental rights.

## STANDARD OF REVIEW

Our review of termination of parental rights proceedings is de novo. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing

the credibility of witnesses." *In re C.Z.*, 956 N.W.2d 113, 120 (Iowa 2021) (citation omitted). "As always, our fundamental concern is the child's best interests." *J.C.*, 857 N.W.2d at 500.

## DISCUSSION

Our analysis for reviewing the termination of parental rights is a three-step process. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). We first determine whether a ground for termination under section 232.116(1) has been established by clear and convincing evidence. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). If such ground for termination has been established, we then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 219–20. If we conclude termination of parental rights is in the best interests of a child, we then consider "whether any exceptions in section 232.116(3) apply to preclude termination" of parental rights. *Id.* at 220.

"However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). Because the mother does not challenge the statutory grounds for termination under paragraph (f), we find the statutory grounds authorizing termination satisfied under section 232.116(1)(f). *See id.* "The mother's failure to raise the . . . statutory grounds for termination waives any claim of error related to those grounds." *In re N.S.*, No. 14–1375, 2014 WL 5253291 (Iowa Ct. App. Oct. 15, 2014); *see Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal.").

## I.    Best Interests

When considering the child's best interests, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The cornerstones of this analysis are the child's safety and the need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). This requires consideration of both the child's long-term and immediate interests. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

As the juvenile court determined in its well-reasoned order, termination here is in the child's best interests. It is undisputed that the child is thriving in the placement family's care. She has all her needs cared for and is loved. However, the mother contends that the bond between her and the child precludes termination. But the district court addressed this concern, agreeing that the mother and the child share a close bond. But the mother's actions cut against the child's best interests and strongly outweigh that factor. The mother has made no progress towards sobriety, with recent positive drug tests and a twenty-year history of methamphetamine use. The mother does not have a stable living situation or employment and makes no argument that it will be resolved by a six-month extension. And there is no evidence in the record to suggest otherwise. Further, the mother's behavior around the placement family is erratic, unpredictable, and introduces unnecessary stress into the child's life. While the mother may love the child, she has not displayed an ability to parent, stay sober, or work well with the placement family. *See In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990). ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on

like a spigot. It must be constant, responsible, and reliable."). Termination is in the child's best interests.

## II.     Statutory Exceptions to Termination

The mother lastly contends that the juvenile court erred in failing to apply a permissive exception to termination due to the parent-child bond or the option of a guardianship.

The exceptions to termination under section 232.116(3) are permissive and not mandatory. *See* Iowa Code § 232.116(3). As it relates to "permissive exceptions, the parent claiming the exception has the burden to prove it should apply." *In re L.E.*, No. 24-1263, 2024 WL 4762849, at *3 (Iowa Ct. App. Nov. 13, 2024). Section 232.116(3)(c) provides that the juvenile court may decline to terminate parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

As discussed above, we do not find the parent-child bond outweighs the mother's inability to provide for the child. And the mother's recent behavior, particularly her interactions with the placement family, have worked against solidifying her bond with the child and have added an additional layer of friction to the child's life.

"[A] guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Here, the mother attempts to rebut that presumption by reference to Iowa Code section 232.116(3)(a), which permits the court to deny termination when "[a] relative has legal custody of the child." Paragraph (3)(a) is inapplicable to this case. A relative does not have legal custody of the child—at the time of the

hearing, the child was in the department's legal custody and was in a placement with her relatives.

We affirm the juvenile court's termination of the mother's parental rights to the child.

**AFFIRMED.**